CHARDON, SECRETARY OF PUBLIC EDUCATION OF
PUERTO RICO, ET AL. *v.* FERNANDEZ ET AL.

No. 81–249.   Decided November 2, 1981*

PER CURIAM.

Respondents were nontenured administrators in the
Puerto Rico Department of Education during the 1976–1977

*Together with *Chardon, Secretary of Public Education of Puerto Rico,
et al.* v. *Rodriguez; Chardon, Secretary of Public Education of Puerto
Rico, et al.* v. *Santiago de Orta; Chardon, Secretary of Public Education
of Puerto Rico, et al.* v. *Angiuta de Rios; Chardon, Secretary of Public
Education of Puerto Rico, et al.* v. *Sanchez; Chardon, Secretary of Public
Education of Puerto Rico, et al.* v. *Santana; Chardon, Secretary of Public
Education of Puerto Rico, et al.* v. *Perez-Ramirez; Chardon, Secretary of
Public Education of Puerto Rico, et al.* v. *Roman de Molina; Chardon,
Secretary of Public Education of Puerto Rico, et al.* v. *Collazo; Chardon,
Secretary of Public Education of Puerto Rico, et al.* v. *Garcia; Chardon,
Secretary of Public Education of Puerto Rico, et al.* v. *Lopez de Ferra;
Chardon, Secretary of Public Education of Puerto Rico, et al.* v. *Beltran;
Chardon, Secretary of Public Education of Puerto Rico, et al.* v. *Cacho de
Freytes;* and *Chardon, Secretary of Public Education of Puerto Rico, et al.*
v. *Navarro,* also on petition for certiorari to the same court (see this
Court's Rule 19.4).

school year.[1] On dates prior to June 18, 1977, each respondent was notified by letter that his appointment would terminate at a specified date between June 30 and August 8, 1977. On June 19, 1978, Rafael Rivera Fernandez filed a complaint alleging that the terminations violated 42 U. S. C. § 1983. The District Court dismissed the suit, holding that the action had accrued on the date the employees received the letters and that the claims were therefore barred by the applicable 1-year statute of limitations, P. R. Laws Ann., Tit. 31, § 5298(2) (1968). The Court of Appeals for the First Circuit reversed on the ground that the limitations period did not begin running until respondents' appointments ended. 648 F. 2d 765 (1981).

The decision below is contrary to a recent decision of this Court: *Delaware State College* v. *Ricks*, 449 U. S. 250 (1980). In that case, Ricks filed suit alleging that the denial of tenure at a state college deprived him of his rights under Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.*, and under 42 U. S. C. § 1981. And we held that the applicable limitations periods began to run when Ricks was denied tenure, rather than on the date his employment terminated. His action was, therefore, time-barred.

The Court of Appeals for the First Circuit distinguished *Ricks* on the ground that Ricks had alleged that *denial of tenure* was the "unlawful employment practice," whereas here respondents allege that *termination of their employment* as administrators was the "unlawful employment practice."

---

[1] Petitioners request a writ of certiorari to the Court of Appeals for the First Circuit to review a total of 14 judgments entered in favor of 36 respondents. The published decision, discussed in text, represents one judgment in a suit brought by 23 respondents; that decision was issued May 8, 1981. See 648 F. 2d 765 (1981). Identical individual judgments in favor of the other 13 respondents were issued on June 11, 1981. See App. to Pet. for Cert. 11a (unpublished orders).

We think *Ricks* is indistinguishable. When Ricks was denied tenure, he was given a 1-year "terminal" contract. Thus, in each case, the operative decision was made—and notice given—in advance of a designated date on which employment terminated.[2]

In *Ricks*, we held that the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful. 449 U. S., at 258. The fact of termination is not itself an illegal act. In *Ricks*, the alleged illegal act was racial discrimination in the tenure decision. *Id.*, at 259. Here, respondents allege that the decision to terminate was made solely for political reasons, violative of First Amendment rights. There were no other allegations, either in *Ricks* or in these cases, of illegal acts subsequent to the date on which the decisions to terminate were made. As we noted in *Ricks*, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.*, at 257. In the cases at bar, respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments. The fact that they were afforded reasonable notice cannot extend the period within which suit must be filed. We therefore grant certiorari. The judgments entered below on May 8, 1981, and June 11, 1981, are reversed, and the cases are remanded for further proceedings consistent with this decision.

*Reversed and remanded.*

---

[2] Delaware State College had a policy of giving a final 1-year contract to teachers who were denied tenure. Only when that contract expired, did the "employment relationship en[d]." 449 U. S., at 253. Apparently, the practice of the Puerto Rico Department of Education was similar in principle. Following a decision to terminate, the actual ending of employment was deferred to a designated date. Advance notice of termination is a customary and reasonable employment practice which affords the employee an opportunity to find another job.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

While I agree with the analysis of Judge Campbell for the Court of Appeals, and therefore join in the dissenting opinion of JUSTICE STEVENS, I believe this *per curiam* disposition is particularly ill-conceived.

It is one thing to hold, as was held in *Delaware State College* v. *Ricks*, 449 U. S. 250 (1980), that for the purpose of computing the limitations period, a cause of action for denial of a benefit such as tenure, and consequent damage, accrues when the plaintiff learns that he *has been* denied that benefit; it is quite another to hold, as the Court does here, that a cause of action for damages resulting from an unconstitutional termination of employment accrues when the plaintiff learns that he *will be* terminated. To my knowledge, such a rule has no analogue in customary principles of limitations law. See 4 A. Corbin, Contracts § 989 (1951) ("The plaintiff should not be penalized for leaving to the defendant an opportunity to retract his wrongful repudiation; and he would be so penalized if the statutory period of limitation is held to begin to run against him immediately").

The thrust of the Court's decision is to require a potential civil rights plaintiff to measure the time for filing his claim from the moment some form of injunctive relief first becomes available. The effect of this ruling will be to increase the number of unripe and anticipatory lawsuits in the federal courts—lawsuits that should not be filed until some concrete harm has been suffered, and until the parties, and the forces of time, have had maximum opportunity to resolve the controversy.

Because this case is plainly distinguishable from *Ricks*, and the decision potentially far-reaching in its impact, the issue should be decided only upon plenary review. The Court's summary reversal is therefore particularly inappropriate, and I respectfully dissent.

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

After noting that most judges who have confronted the issue have reached a conclusion at odds with the Court's holding today, Judge Campbell, writing for the Court of Appeals, cogently explained why the decision in *Delaware State College* v. *Ricks*, 449 U. S. 250, is not dispositive and should not be followed in this case:

> "The issue of when the cause of action accrues depends, we believe, on when the alleged unlawful act occurred. It is necessary, therefore, to identify the unlawful act. Where, as here, the claim is that an employment decision was made for a prohibited reason, it could be argued that the unlawful act was the making of the decision, rather than the implementation of it. But we think such a refined rule would depart too sharply from the understanding of ordinary people. The plaintiffs in these cases are complaining that they were demoted or discharged, not merely that a decision was made on a particular occasion, of which notice was then given, to take such action against them. Had the decision been made but not yet implemented, equitable relief might have been sought to forestall irreparable harm, but it is unlikely that plaintiffs would have sought or received damages until or unless the threatened action was consummated. The alleged unlawful act was revocable, incomplete and, for practical purposes, nonexistent until the actual demotion or discharge.
>
> "Moreover, important policies of judicial administration favor a rule based on the date of implementation. While the date of notice in the present cases was easily established, other cases would surely arise in which resolution of that question would require lengthy proceedings. Notice might be oral, or it might be ambiguously phrased, or it might be transmitted by one whose au-

thority is subject to question. We see no value in requiring courts and parties to devote their resources to litigating the adequacy of notice, when the date of the action itself is easily determined. In saying this we are aware that the Supreme Court has declined to reach out for an easily identified date when that date bears no genuine relationship to the act of which plaintiff complains. *Compare Delaware State College* v. *Ricks*, [449 U. S. 250] (1980) (date of termination not sufficiently connected to the challenged denial of tenure), discussed *infra*. But where, as here, the date that is most closely related to the plaintiffs' claim is also the date most easily identified, we think concern for adoption of the rule that best promotes certainty and eliminates litigation over technical niceties is well warranted.

"After the district court's decision of these cases, the Supreme Court decided *Delaware State College* v. *Ricks*, *supra*. Defendants contend that that decision compels affirmance here. We disagree. Ricks, a black Liberian instructor, was informed in June 1974 that the faculty of Delaware State College had voted to deny him tenure. In accordance with the school's usual practice, he was thereafter granted a one-year terminal contract, after which his employment with the school ended. In his suit alleging discrimination on the basis of national origin, Ricks contended that the limitations period under Title VII began to run only when he left the university in June 1975. The Supreme Court rejected this argument and concluded that Ricks' cause of action had accrued when he was notified of the denial of tenure, in June 1974, and that his suit was therefore barred. The Court focussed on the allegations of Ricks' complaint, which it found to charge discrimination in the denial of tenure, not in the discharge or any other subsequent action. The Court held that the denial of tenure was the 'unlawful employment practice' within the meaning of Title

VII, and that the date of that action was therefore the beginning of the limitations period. Three justices, in dissent, accepted the majority's analysis (*i. e.*, that denial of tenure, not discharge, was the unlawful employment practice) but placed the denial of tenure at a later date because of the later decision of an internal grievance board. Justice Stevens, alone among the justices, took the view that denial of tenure is analogous to advance notice of discharge. Based on that analogy, he argued that the date of discharge should control.

"Refusal of the *Ricks* majority to adopt Justice Stevens' analogy does not seem to us in any way to repudiate the precedents to which he sought to draw an analogy. The majority held merely that the denial of tenure in the academic setting is fundamentally different from a notice of discharge; it is a distinct and separate employment action, with important and far-reaching consequences for all aspects of the employee's status. While denial of tenure is often followed by discharge, it is not always, and the consequences of denial of tenure are not dependent on its being followed by discharge. The Court found that Ricks' complaint was based on the denial of tenure, which was effective immediately; it followed, therefore, that the limitations period began as soon as Ricks received notice of that action. Here, plaintiffs complain of discharges and demotions, not of any distinct event that occurred on an earlier date. The letters notifying them of the planned actions were notice and nothing more; they were not actions in themselves comparable to the denial of tenure.

"To be sure, as we have said, one can argue that the notices themselves mirror the allegedly discriminatory motives of the defendants. One can also argue that a suit for injunctive relief might lie after receipt of notice (or, indeed, even before) to forestall threatened irreparable harm. Still plaintiffs' quarrel is with their demo-

tions and discharges—not with the notices themselves. No actual harm is done until the threatened action is consummated. Until then, the act which is the central focus of the plaintiffs' claim remains incomplete. Such was not the situation in *Ricks*, where the denial of tenure was itself the completed act being challenged.

"We conclude, therefore, that *Ricks* is inapplicable to these cases, and that the district court erred in dismissing the complaints." 648 F. 2d 765, 768–770 (CA1 1981) (footnotes omitted).

For the reasons stated by the Court of Appeals, I respectfully dissent.