Jon KUEMMERLEIN and Mary Kuemmerlein, Plaintiffs–Appellants,

v.

BOARD OF EDUCATION OF the MADISON METROPOLITAN SCHOOL DISTRICT, Donald A. Hafeman, Superintendent, Madison Metropolitan School District and E. James Travis, Superintendent, Madison Metropolitan School District, as successor in office to Donald A. Hafeman, Defendants–Appellees.

David JOHNSON, Plaintiff–Appellant,

v.

BOARD OF EDUCATION OF the MADISON METROPOLITAN SCHOOL DISTRICT, Donald A. Hafeman, Superintendent, Madison Metropolitan School District and E. James Travis, Superintendent, Madison Metropolitan School District, as successor in office to Donald A. Hafeman, Defendants–Appellees.

Nos. 89–1730, 89–1731.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1989.

Decided Jan. 30, 1990.

Keith R. Clifford, David D. Relles (argued), Clifford & Relles, Madison, Wis., for plaintiffs-appellants.

Clarence L. Sherrod (argued), Madison, Wis., for defendants-appellees.

Before WOOD, Jr. and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

These two consolidated appeals, decided together by the trial court, present very similar facts and identical legal issues. Both plaintiffs have filed reverse discrimination claims under 42 U.S.C. § 1983 alleging the defendants unconstitutionally used race as a determinative factor in decisions about teacher layoffs. On the defendants' motions for summary judgment, the district court held that the plaintiffs' claims were time barred by the statute of limitations. For the reasons stated below, we affirm.

## I.  FACTUAL BACKGROUND

At the time of their layoffs, plaintiffs Jon Kuemmerlein[1] and David Johnson had been school teachers employed by the Madison Metropolitan School District ("MMSD")[2] since the early 1970s. On January 18, 1982, the board of directors for MMSD voted a reduction in staff equal to 117.3 full-time positions. Pursuant to established procedures, MMSD notified the plaintiffs on March 2, 1982, that they would be among those laid off at the end of the school year. On August 23, 1982, MMSD began classes without the employment of either plaintiff. Although in subsequent years both plaintiffs were recalled to work, it is beyond dispute that they suffered economic harm as a result of their layoffs. Plaintiffs filed the present suit on May 11, 1988.

The plaintiffs were laid off based on criteria set forth in their collective bargaining agreement. That contract allowed senior teachers who were laid off to bump less senior teachers who were not laid off. To accommodate an affirmative action program, however, MMSD could exclude twenty percent of the positions subject to layoff from the bumping procedures. Pursuant to this ability to protect affirmative action positions, MMSD retained less senior minority teachers for each of the plaintiffs' positions. In light of *Wygant v. Jackson Board of Education*, 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986), the constitutionality of this practice might be questioned.

Despite receiving notices of layoff on March 2, 1982, the plaintiffs may still have held out hope that they would not be out of work when the new school year started on August 23, 1982. In the five previous years, MMSD had recalled, within a month and a half of the beginning of the school year, an average of fifty-one percent of the teachers who received layoff notices. In one year, MMSD even hired back all twelve

---

**1.** Plaintiff Mary Kuemmerlein has joined Jon Kuemmerlein's suit alleging a loss of marital property, interference with her spousal relationship, and the loss of consortium and society from her husband, Jon. Because Mary Kuemmerlein's cause of action is based on her husband's claim, all future references will be to Jon Kuemmerlein only.

**2.** For simplicity's sake, we will use the term "MMSD" to refer to all defendants.

teachers who had earlier been placed on layoff status. By October 4, 1982, the year of the plaintiffs' layoffs, MMSD eventually recalled fifty-six percent of the laid-off teachers.

Reaffirming its previous decisions, the district court held that the applicable statute of limitations was six years. The plaintiffs' claims, however, were still found to be time barred. The district court ruled that the plaintiffs' claims began to accrue on March 2, 1982, the date they received layoff notices. Because the plaintiffs filed suit on May 11, 1988, the statute of limitations barred their claims, and summary judgment was awarded to the defendants. In so ruling, the district court rejected the plaintiffs' various arguments that the defendants continued to violate their constitutional rights after they received layoff notices. On appeal, the plaintiffs have abandoned their argument that the defendants' actions can be seen as continuing constitutional violations.

## II. DISCUSSION

The defendants have argued to this court that the applicable statute of limitations for section 1983 actions in Wisconsin is three years. Our recent decision in *Gray v. Lacke*, 885 F.2d 399, 407–09 (7th Cir.1989) makes clear that the appropriate statute of limitations in Wisconsin is six years. The defendants have advanced no reasons why *Gray* should be so quickly reexamined, and we reaffirm its rule of law. Thus, we will use six years as the statute of limitations for plaintiffs' claims.

The plaintiffs received layoff notices on March 2, 1982, but did not file the present suit until May 11, 1988, more than six years later. The plaintiffs advance two arguments why we should not affirm the trial court's grant of summary judgment for the defendants. First, plaintiffs argue that their claims did not begin to accrue until their actual termination on August 23, 1982—the first day that MMSD held classes without the employ of either plaintiff while retaining less senior minority teachers. Second, the plaintiffs argue that

a genuine issue of material fact exists as to when their cause of action accrued.

### A. Statute of Limitations

■ To determine when the plaintiffs' cause of action accrued, we must focus on the discriminatory act of which the plaintiffs complain. Here, the plaintiffs claim they were unconstitutionally laid off, and the illegal act giving rise to this claim is MMSD's layoff decision. Thus, the plaintiffs' cause of action began to accrue the day they received notice of MMSD's decision. The plaintiffs contend that the discriminatory act was MMSD's beginning of classes without the plaintiff's employ. Unfortunately for the plaintiffs, the Supreme Court has rejected their position. *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *see also Lorance v. AT & T Technologies*, —— U.S. ——, 109 S.Ct. 2261, 2266 n. 3, 2269 n. 5, 104 L.Ed.2d 961 (1989) (applying *Ricks/Chardon* rule).

In *Ricks*, the plaintiff was a college professor who alleged discrimination in the college's decision not to offer him tenure. The Court held the plaintiff's cause of action began to accrue when the plaintiff received notice of the college's final decision and not when he was actually terminated from employment one year later. *Ricks*, 449 U.S. at 261–62, 101 S.Ct. at 505–06. *Chardon* amplified the *Ricks* decision by holding that a statute of limitations began to run when nontenured teachers received letters notifying them they would be terminated at specified dates in the future. *Chardon*, 454 U.S. at 7–8, 102 S.Ct. at 28–29. The *Chardon* Court specifically rejected the date of the teachers' actual termination as the appropriate starting line for their claims. *Id.* Our own cases have interpreted the *Ricks/Chardon* rule to mean that the statute of limitations runs from the date of notice, not from the date of actual termination. *See, e.g., Mull v. Arco Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir.1986); *Heiar v. Crawford County*, 746 F.2d 1190, 1194 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985).

■ Kuemmerlein and Johnson's circumstances are indistinguishable from those in *Ricks* and *Chardon*. The plaintiffs argue that their injury was incomplete until their actual termination, when classes began without them and with less senior minority teachers.[3] Precedent, however, instructs us to focus on the discriminatory act, not the point at which the consequences of the act become painful. *Chardon*, 454 U.S. at 8, 102 S.Ct. at 29; *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504; *see also Lorance*, 109 S.Ct. at 2266 n. 3. Plaintiffs' actual termination only made painful the consequences of the discriminatory act: the allegedly illegal act was the layoff decision itself.

Plaintiffs argue that when they received their layoff notices, they were not yet irrevocably terminated. Rather, given MMSD's practice of soon rehiring fifty-four percent of the teachers given layoff notices, the plaintiffs could have been recalled back to work before the new school year began. This argument, however, would undermine the needed certainty behind the statute of limitations. At what percentage of recall would it be appropriate to require a potential plaintiff to file a lawsuit at the time of receiving a layoff notice rather than waiting until actual termination?[4] The statute of limitations is intended to provide a repose for those who might be the subject of litigation and to protect against stale lawsuits. To fulfill these purposes, bright lines need to be drawn. The plaintiffs' hopes of recall were not enough to prevent the start of the statute of limitations. No matter what the chance of recall, a plaintiff's cause of action for employment discrimination stemming from a layoff decision runs from the time of notice, not from the time of actual termination. The boundaries of the statute of limitations must be concrete.

The plaintiffs also have seized upon language in Justice Brennan's *Chardon* dissent to interpret the *Ricks/Chardon* rule as measuring the time for filing a claim "from the moment some form of injunctive relief first becomes available." *See* 454 U.S. at 9, 102 S.Ct. at 29 (Brennan, J., dissenting). The plaintiffs then go on at length to discuss how injunctive relief was not available to them at the time they received their notices of layoff. We seriously consider all statements made by the Supreme Court, including those made in dissent. Justice Brennan's assertion in dissent, regardless of its merit, hardly rises to the rule of law that plaintiffs would ascribe to it. Therefore, we decline to analyze the plaintiffs' case in terms of when injunctive relief first became available to them.

Finally, the plaintiffs try to find solace in the recent case of *Lorance v. AT & T Technologies*, ⸻ U.S. ⸻, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). In that case, the Court noted that a facially discriminatory system discriminates each time it is applied. *Id.* 109 S.Ct. at 2269 n. 5. Based on this language, the plaintiffs conclude that a discriminatory act occurred at the time of their actual termination. The plaintiffs misinterpret *Lorance;* it does not modify the *Ricks/Chardon* rule which governs the timing of the discriminatory act. Rather, *Ricks* and *Chardon* tell us that a discriminatory act occurs when a potential defendant makes a discriminatory employment decision. *Lorance* only states that a separate discriminatory act occurs each time a potential defendant makes a discriminatory employment decision. Because the plaintiffs were laid off only once, *Lorance* provides them no comfort.

Therefore, the plaintiffs' causes of action began to run on the day they received notices of layoff, March 2, 1982. Because

3. The plaintiffs repeatedly emphasize that one element of their reverse discrimination claim is the retention of less senior minority employees. By styling their argument in this manner, plaintiffs appear to contend that a different rule should apply to reverse discrimination claims. Plaintiffs cite us no authority for this novel proposition. We see no difference between the plaintiffs' claim and an ordinary discrimination claim under similar facts, which would require proof of the retention of less senior nonminority employees.

4. Conceivably, a sham layoff notice, where all notified employees are eventually recalled to work, might not start the running of the statute of limitations. The facts of this case do not suggest such a scenario.

the plaintiffs did not file the present action until May 11, 1988, more than six years later, the statute of limitations bars their claims. The plaintiffs assert that had they filed their suit after receiving layoff notices but before their actual termination, a court might have dismissed their claim as unripe and speculative. As the district court observed, whatever problems the *Ricks/Chardon* rule has, it is the rule adopted by the Supreme Court and we follow it here today.

### B. *Notice*

The plaintiffs also argue that a genuine issue of material fact exists as to when they received notice of their layoff. We must reject the plaintiffs' claim.

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). We review de novo the district court's entry of summary judgment. *Greer Properties, Inc. v. LaSalle Nat'l Bank*, 874 F.2d 457, 459 (7th Cir.1989). Thus, in the context of á summary judgment based on the statute of limitations, we must find (1) that the statute of limitations has run and (2) there exists no genuine issue of material fact regarding the time at which plaintiff's action accrued. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1219 (7th Cir.1984).

The statute of limitations begins to run when a reasonable plaintiff knew or should have known of facts that would support a charge of discrimination. *See Equal Employment Opportunity Comm'n v. O'Grady*, 857 F.2d 383, 393–94 (7th Cir.1988) (ADEA case). In the present case, there were undisputed facts that indicate plaintiffs knew or should have known of the discriminatory nature of their layoffs. The plaintiffs did not dispute that (1) MMSD provided complete information regarding their layoffs to their union; (2) this information included which minorities had

been sheltered from the layoff process and the relative seniority of individual teachers; and (3) the plaintiffs could have obtained this information by a phone call to their union. Most importantly, the plaintiffs admitted that, as members of their union, they knew or should have been aware of the facts surrounding their complaint in this case.[5] In light of these overwhelming and unchallenged facts, we conclude no genuine issue of material fact exists that plaintiffs received notice of the discriminatory nature of their layoffs outside the six-year limitation period.

### III. CONCLUSION

The *Ricks/Chardon* rule is clear: a cause of action for employment discrimination begins to run on the date of notice rather than the date of actual termination. Plaintiffs received notice of their layoffs on March 2, 1982, and did not file the present action until May 11, 1988. A six-year statute of limitations applies. Accordingly, the plaintiffs' claims are time barred. The judgment of the district court is

AFFIRMED.

---

5. The information regarding the plaintiffs' layoffs was provided to their union sometime from March 2 to March 23, 1982. Because this entire time period occurred more than six years before the plaintiffs filed the instant case, the exact date is inconsequential.