966 F.2d 1452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harry J. GIAMBRONE, Plaintiff-Appellant,
v.
SPALDING AND EVENFLO CO., INC., Defendant-Appellee.
 No. 91-3937.
 United States Court of Appeals, Sixth Circuit.
 June 11, 1992.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Harry Giambrone, appeals from a summary judgment entered by a magistrate judge in this action brought pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, et seq.[1] Plaintiff's complaint alleged that he was within the protected age group and otherwise qualified for his job, but nonetheless was terminated and replaced by a younger individual. Although defendant denies that Giambrone was adequately performing his duties, the basis of its summary judgment motion was that plaintiff's complaint had not been filed within 300 days of the time he knew or reasonably should have known he was being discharged.
 
 
 2
 The magistrate judge, in a thorough and careful written opinion, concluded that the complaint was not timely filed and entered summary judgment for the defendant. Our de novo review of the record and applicable law convinces us that the magistrate judge was correct, and we affirm on the basis of his written opinion. We write additionally only for further clarification.
 
 
 3
 Plaintiff, who was 58 years of age at the time he started working for the defendant, was employed from January 25, 1983, until April 27, 1990. Defendant hired plaintiff to work as an industrial design engineer in its juvenile furniture division. The primary responsibilities of this position were to improve existing products and develop new product lines. Although Giambrone was a good worker insofar as attitude and attendance were concerned, he was singularly unsuccessful in bringing new products to market. In fact, some of his proposed designs were considered unsafe or unworkable. This situation continued for almost seven years, and then came to a head in a series of meetings held in late 1989.
 
 
 4
 On October 16, 1989, Giambrone met with his immediate supervisor, Richard Glover, and the vice-president for Human Resources, Dennis Pregent. After reviewing plaintiff's unsuccessful product record, Glover informed him that he would not be receiving a salary increase. Plaintiff also was asked if he had considered retiring. Plaintiff indicated he had not, and inquired as to the consequences of not retiring. Pregent responded with a kind of "carrot and stick" reply. Giambrone was told if he stayed, his reviews would only get worse, but, if he retired, the company would significantly increase his severance pay. Plaintiff was told to think it over and reply by October 20, 1989.
 
 
 5
 A subsequent meeting was held on October 20, 1989, and another on November 17, 1989. Although voluntary retirement was discussed further, Giambrone declined to leave voluntarily.
 
 
 6
 On December 12, 1989, a final meeting was held with Pregent, Glover, and the plaintiff present. At this meeting, plaintiff was presented with a written document, dated December 11, 1989, which detailed specifically plaintiff's performance failures and recapped in some detail what had transpired at the earlier meetings. The document concluded by stating that "you were advised that the situation could not continue and that we would discuss ways to handle your permanent separation from the Company." (App. 79). It was signed by Pregent. It is this meeting and this document which triggered the magistrate judge's conclusion that at this point Giambrone knew or reasonably should have known he was being terminated.
 
 
 7
 On April 24, 1990, Giambrone received formal notice in writing that he was "being terminated effective Friday, April 27, 1990." (App. 58). Subsequently, on November 13, 1990, plaintiff filed a complaint with the Ohio Civil Rights Commission (OCRC). Since this filing did not occur within 180 days of the adverse employment action complained of, the OCRC had no jurisdiction. Nonetheless, the filing was sufficient to satisfy the state filing requirement of the ADEA.
 
 
 8
 Under the ADEA, plaintiff is required to file a complaint with the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged discriminatory act. Using the December 12, 1989, meeting date as a starting point, plaintiff's complaint was not filed until 335 days had elapsed.
 
 
 9
 The magistrate judge exhaustively reviewed the applicable law, and nothing would be served by setting it forth again in this opinion. Suffice it to say that the cardinal principle applicable to these proceedings is that a plaintiff's cause of action accrues under the ADEA when he is notified of impending termination, not when employment actually ceases. Janikowski v. Bendix Corp., 823 F.2d 945, 947 (6th Cir.1987) (citing Chardon v. Fernandez, 454 U.S. 6 (1981), and Delaware State College v. Ricks, 449 U.S. 250 (1980)).
 
 
 10
 There are a number of reasons why we conclude this December 12, 1989, meeting started the clock running. First, it was the fourth meeting within a period of a month and a half, and at all the earlier meetings poor performance and retirement were discussed. Plaintiff was presented with a specific severance plan option and was given only a short four-day period to reply. There was never any discussion of what Giambrone might do to improve. All of the discussions pointed toward termination, voluntary or otherwise.
 
 
 11
 Second, the involvement of the Human Relations Director clearly would signify that more than just a performance review was involved. In fact, plaintiff even questioned if his age was implicated in these proceedings.
 
 
 12
 Third, it is clear that Giambrone was not a bad employee; he just was not making any money for the company. The defendant tried to ease him out with a sweetened severance offer, but Giambrone refused.
 
 
 13
 Against this backdrop, it would be unreasonable for Giambrone to read the December 12, 1989, letter as other than a notice of termination. The fact that no specific date of termination was included was simply the defendant's way of still leaving the door open to allow Giambrone to opt for voluntary severance. This does not make the termination conditional. Giambrone was officially notified of his termination at the December 12, 1989, meeting even though the precise method of his leaving was not yet resolved.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Pursuant to the provisions of 28 U.S.C. § 636(c), the parties consented to disposition of this matter by a magistrate judge. (App. 106-07)