**ANAHEIM GARDENS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 93–655C.

United States Court of Federal Claims.

July 21, 1995.

Charles L. Edson, Washington, DC, for plaintiffs. Harry J. Kelly, of counsel.

Richard E. Rice, Washington, DC, with whom were Asst. Atty. Gen. Frank W. Hunger, and David M. Cohen, Director, for defendant. Kim Kendrick and Kathleen Burtschi, Dept. of Housing and Urban Development, of counsel.

### *OPINION*

ROBINSON, Judge:

Now before the court is plaintiffs' second motion to amend their complaint. Defendant opposes the motion. The matter has been fully briefed, and oral argument was held on July 20, 1995.

The background of this case is fully discussed in *Anaheim Gardens v. United States,* 33 Fed.Cl. 24 (1995). For the purposes of this motion, it is sufficient to restate the following: Plaintiffs are owners of low-income rental housing who purchased their properties more than 20 years ago using federally insured mortgages. 33 Fed.Cl. at

27. Each plaintiff simultaneously entered into a regulatory agreement with the Department of Housing and Urban Development ("HUD") or its predecessor, and under that agreement each plaintiff agreed to abide by HUD-imposed affordability restrictions—specifically, restrictions on the income levels of tenants, on the rents that could be charged, and on the rates of return that owners could receive from their enterprise. *Id.* By its terms, the regulatory agreement (including the affordability restrictions), along with the mortgage insurance provided by HUD, were to remain in effect as long as the mortgage remained outstanding. The mortgage, by its own terms, permitted plaintiffs to prepay in full with HUD's permission during the first 20 years and to prepay in full without HUD's permission after the first 20 years. *Id.*

In 1988 Congress passed the Emergency Low Income Housing Preservation Act ("ELIHPA"), Pub.L. 100–242, 101 Stat. 1877 (reprinted as amended at 12 U.S.C.A. § 1715*l* (note) (West 1989)). Among other things, ELIHPA imposed a moratorium on mortgage prepayments without HUD's express consent, overruling those provisions of plaintiffs' mortgage notes which allowed unconsented prepayments after the mortgage's first 20 years. 33 Fed.Cl. at 27. Upon the expiration of ELIHPA in 1990, Congress enacted the Low Income Housing Preservation and Resident Homeownership Act ("LIHPRHA"), Pub.L. 101–625, 104 Stat 4249 (1990) (reprinted at 12 U.S.C.A. § 4101 *et seq.*, which continued ELIHPA's prohibition against unconsented mortgage prepayments and which authorized HUD to offer a wide range of financial benefits as "incentives" for

forbearing prepayment and staying in the HUD program. 33 Fed.Cl. at 28.

Plaintiffs filed their original four-count complaint on October 25, 1993, and they filed an unopposed amended complaint with minor changes on March 15, 1994. Defendant subsequently filed a motion to dismiss the complaint in its entirety. By an Opinion dated March 27, 1995, the court granted defendant's motion with respect to Count I (seeking damages for HUD's allegedly delayed issuance of regulations implementing the LIHPRHA incentive legislation), 33 Fed.Cl. at 31–36, and Count IV (a temporary taking claim based on the same delays discussed in Count I), *Id.* at 36–38. Plaintiffs withdrew their claim under Count II (seeking compensation for alleged delays in HUD's processing of applications for incentives).[1] *Id.* at 30, n. 10. With respect to Count III (alleging a taking of a property right without just compensation based on the legislative prohibition against mortgage prepayment), the court denied defendant's motion to dismiss and ordered the matter to be tried. *Id.* at 38.

Plaintiffs now wish to add Count V, which appears to set forth a claim for breach of contract damages based on the enactment of LIHPRHA.[2] Plaintiffs in the present case apparently were inspired to add such a claim only after a similarly situated group of plaintiffs in *Cienega Gardens v. United States,* 33 Fed.Cl. 196 (1995), succeeded in obtaining a finding from this court that the government was liable for a breach of contract claim based on ELIHPA's and LIHPRHA's legislative revocation of mortgage prepayment rights. 33 Fed.Cl. at 208–13. Unlike the plaintiffs in *Cienega Gardens,* however, the plaintiffs in the present case insist that they

---

1. Plaintiffs may disagree with the court's view that Count II was withdrawn. As explained in the court's Opinion, 33 Fed.Cl. at 30, n. 10, the court's understanding was based on an explicit statement by plaintiffs' counsel during oral argument that HUD had resolved the specific problems of which plaintiffs had complained in Count II. The court notes that even if plaintiffs had not withdrawn Count II, plaintiffs' claim for compensation for administrative delays would probably have been dismissed for the reasons stated in *Cienega Gardens v. United States,* 33 Fed.Cl. 196, 223–24 (1995).

2. Count V reads as follows:

COUNT V
BREACH OF CONTRACT

91. Paragraphs 1 through 90 are incorporated as of [sic] repeated herein.

92. HUD has breached its contractual obligations to Owners by abrogating Owner's [sic] right to prepay their mortgages and terminate their participation in HUD's low-income housing programs.

93. Owners have been damaged by the Defendant's breach in an amount to be shown at trial. Owners are continuing to suffer injury and resulting damages each day they are denied their contractual right to prepay their mortgages.

do not wish to base their contract claim in any respect on the enactment of ELIHPA.

If the instant matter were entirely within the court's discretion, the court would not hesitate to deny plaintiffs' motion to amend their complaint. Because plaintiffs are known to the court to have followed the *Cienega Gardens* litigation closely, they were certainly aware that they had a potential breach of contract claim against the government at least as early as January 1994, when the plaintiffs in *Cienega Gardens* filed their complaint. Nonetheless, plaintiffs neglected to bring their breach of contract claim until after they had lost three of their four original claims on a dispositive motion and after they had learned that the *Cienega Gardens* plaintiffs had been successful with their breach of contract claim. The timing of plaintiffs' motion, thus, casts doubt upon the sincerity with which plaintiffs claim to have been damaged by defendant's alleged contractual breach.[3]

Because the Rules of the United States Court of Federal Claims ("RCFC") limit somewhat the court's discretion in this matter, plaintiffs' motion must be weighed on its substantive merits and not merely on the court's impressions of plaintiffs' litigation tactics. The rules command, at RCFC 15(a), that after a response has been served, "a party may amend the party's own pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The rules further state, at RCFC 15(c), that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." RCFC 15 is identical for all intents and purposes to Rule 15 in the Federal Rules of Civil Procedure. *Effingham County Bd. of Educ. v. United States,* 9 Cl.Ct. 177, 179–80 (1985).

In opposing plaintiffs' motion, defendant argues that plaintiffs' contract claim is flawed because it alleges a breach of contract based on the enactment of LIHPRHA in November 1990, whereas the asserted breach actually occurred, in defendant's view, on the enactment of ELIHPA in February 1988. Defendant contends that the prepayment restrictions which are the basis of plaintiffs' proposed breach claim were originally part of ELIHPA and were merely reenacted in LIHPRHA when ELIHPA expired. Defendant further contends that because plaintiffs did not set forth any claims based on ELIHPA in their October 1993 complaint, the proposed breach claim cannot relate back to the October 1993 filing date for the purposes of RCFC 15(c). As a result, defendant argues, plaintiffs' motion to add a breach claim to their case in 1995 comes more than six years after the February 1988 enactment of ELIHPA and is, therefore, barred by the applicable statute of limitations under 28 U.S.C. § 2501.

In arguing that the plaintiffs' breach claim must have accrued on the enactment of ELIHPA and not on the enactment of LIHPRHA, defendant cites a couple of cases which state the general rule that the mere legislative reenactment of a statute does not give rise to a new cause of action for claim-accrual purposes when the same cause of action could have been brought before the reenactment: *Alaska v. United States,* 32 Fed.Cl. 689, 701–03 (1995); *De Anza Properties X, Ltd. v. County of Santa Cruz,* 936 F.2d 1084, 1086–87 (9th Cir.1991).

Plaintiffs, however, dispute the notion that LIHPRHA was a reenactment of ELIHPA, noting that, aside from the prepayment restrictions, the 1990 legislation contained several features which were omitted from ELIHPA. Particularly, LIHPRHA contained new provisions for certain financial incentives and methods for appraising the value of an owner's property, among other things. Because of the organic differences between ELIHPA and LIHPRHA, plaintiffs contend that the prepayment restrictions of LIHPRHA should be viewed as replacing those in ELIHPA, not extending them. As an alternative, plaintiffs argue that their contract claim should be viewed as accruing on the date their respective prepayment rights matured (*i.e.,* the 20–year anniversary dates of HUD's

---

**3.** At oral argument, plaintiffs' counsel revealed that at this stage he had only an inchoate concept of what plaintiffs' contract damages are and how they might be measured.

endorsement of their mortgage notes). If their claims were thus predicated on their contractual anniversary dates, plaintiffs argue that they should not be time-barred as long as their respective anniversary dates fell within the six years preceding their motion to amend.[4]

The court agrees with defendant that the prepayment restrictions which are the basis of plaintiffs' breach claim were imposed in 1988 as part of ELIHPA and were effectively reenacted in 1990 as part of LIHPRHA. The contracts upon which plaintiffs wish to sue were breached once, not twice. Although LIHPRHA contained several new provisions which had not been included in the earlier legislation, none of those provisions bears directly on plaintiffs' prepayment rights. Those rights, as set forth in their mortgage notes, were lost in 1988 and never regained. That finding, however, does not completely resolve the issue of when plaintiffs' breach of contract claim "accrued" for the purposes of the six-year statute of limitations under 28 U.S.C. § 2501.[5]

■ Accrual of a claim occurs when "all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir. 1988) (emphasis in original). In the present case, it is doubtful that the enactment of ELIHPA in February 1988 was sufficient to satisfy the standard described in *Hopland.* First, ELIHPA was enacted expressly as a temporary measure. *See Anaheim Gardens,* 33 Fed.Cl. at 27 ("[ELIHPA] effectively placed a two-year moratorium on prepayments in order to give Congress 'breathing room' with which to devise a permanent solu-

tion"). Thus, plaintiffs would not have been unreasonable to have forborne litigation until after they had learned what sort of "permanent solution" Congress would devise. Second, the majority of properties at issue in this case had not, by February 1988, reached the 20–year anniversary date which was a prerequisite to unconsented mortgage prepayments under their original contracts. Certainly, no plaintiff could be considered to have suffered any damage as a result of the prepayment restrictions until such date as a plaintiff might have exercised the contractual prepayment rights on which the proposed breach claim is based.

The latter rationale is supported by what has been called the "stabilization doctrine" in takings law. The stabilization doctrine was initially articulated in *United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947). In *Dickinson,* the plaintiff brought suit under the Tucker Act seeking just compensation after the government constructed a dam on a river and permanently flooded the plaintiff's property. *Id.* at 746–47, 67 S.Ct. at 1383–84. In contesting the suit, the government argued that the six-year limitation period began to run on the date that the dam began to impound the water, or at least on the date that river was raised above its former level. *Id.* at 747, 67 S.Ct. at 1384. The Court rejected those positions, finding that flooding of plaintiff's property was a gradual process and "not a single event." *Id.* at 749, 67 S.Ct. at 1385. Consequently, the Court said that the plaintiff acted appropriately by "postponing suit until the situation [became] stabilized." *Id.* The point of stabilization, the Court indicated, was the appropriate time for assessing a "final account" of the value of property taken. *Id.*

4. There are 39 separate properties (owned by 33 plaintiffs) at issue in this case, each with its own 20–year anniversary date. The court notes that if plaintiffs' breach of contract claims were found to have accrued as of their respective 20–year anniversary dates, then those plaintiffs owning properties whose anniversary dates fell more than six years prior to plaintiff's May 5, 1995, motion to amend would be barred from pursuing contract claims with respect to those properties. Although the parties have slight disagreements as to the anniversary dates for some of the properties in this case, both parties do agree that the

20–year anniversary dates for Southgate and Jefferson Court Apartments (owned by plaintiff Thetford Properties IV, Ltd. Partnership) and Kewalo Apartments (owned by plaintiff Janey S. Wong) occurred more than six years before May 5, 1995.

5. The court notes, moreover, that this court has previously held that ELIHPA, as of enactment, constituted a breach of contract with respect to plaintiffs' situated similarly to the present ones. *Cienega Gardens,* 33 Fed.Cl. at 210.

■ Applying *Dickinson* in the present case, the court sees no reason why the limitation period for most of the properties in this case should be viewed as beginning in February 1988, when plaintiffs could not have exercised any prepayment rights with respect to those properties. A plaintiff could not be expected to have been able to make even a rough estimate of its contract damage when the plaintiff's prepayment rights were not even ripe. The court believes, therefore, that the limitation period with respect to any of the properties in this case began as of the property's 20–year anniversary date *or* the date of the enactment of ELIHPA, whichever is later. Under this analysis, the proposed breach claim can be brought by the majority of the instant plaintiffs as an amendment to their pleadings or as an entirely separate action because, with respect to a majority of properties in this case, the six-year limitation period starting from the 20–year anniversary date has not run. Accordingly, while plaintiffs apparently fail to qualify their contract claim for relation-back under RCFC 15(c) because they have not previously alleged an injury based on ELIHPA, relation-back for the majority of plaintiffs is not required because their breach claims are not time-barred.

Although *Dickinson* concerned the plaintiff's exercise of property rights under the Fifth Amendment's takings clause and not, specifically, contract rights, the court considers its application to plaintiffs' proposed contract claim justified in the present case because the prepayment rights which plaintiffs wish to assert are inextricably linked to the property rights which plaintiffs have otherwise asserted in their taking claim. *See Cienega Gardens*, 33 Fed.Cl. at 213 (prepayment as a property right). Moreover, a similar rule has been applied in many jurisdictions in contract cases in which a defendant has repudiated a contract prior to the scheduled date of performance. In such cases, courts have found that the repudiation was only partially anticipatory because the defendant could have retracted the repudiation and performed as scheduled. Under such circumstances, courts have allowed plaintiffs to postpone taking action—and accordingly, postpone the start of the limitation period—until after the date originally scheduled for defendant's performance.[6] *See 4 Corbin on Contracts* § 989 (1951). *Accord Kinsey v. United States*, 852 F.2d 556, 558 (Fed.Cir. 1988) ("An anticipatory repudiation occurs when an obligor communicates to an obligee that the obligor will commit a breach in the future.... In such a situation, the normal rule is that the statute of limitations begins to run from the date of performance specified in the contract unless the obligee elects to sue earlier for anticipatory breach") (citations omitted). Such circumstances are cer-

---

6. Defendant found a reference to this same theory (Corbin at § 989) in a dissenting opinion in *Chardon v. Fernandez*, 454 U.S. 6, 9, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (Brennan, J., dissenting). Since the theory was cited by the minority in that case, defendant suggests that the Supreme Court as a whole rejected it.

After reviewing *Chardon*, the court believes that defendant may be overreaching in its interpretation that the Supreme Court rejected the application of Corbin § 989 for all purposes. *Chardon* was a case which concerned a statutory cause of action for wrongful termination under 42 U.S.C. § 1983. At issue in the case was whether the one-year limitation period for bringing suit under § 1983 should begin running on the date when an employee was notified of his pending termination, or rather, on the date when he was actually terminated (the later date). *Chardon*, 454 U.S. at 7, 102 S.Ct. at 29. The majority held that the period began running on the date of notification because on that date "a final decision had been made to terminate [the

employment]." *Id.* at 8, 102 S.Ct. at 29. The majority opinion did not expressly distinguish or even mention Justice Brennan's suggestion of using Corbin's § 989 theory to reach a different result.

The facts now before this court suggest that *Chardon* is sufficiently distinguishable from the present case so as to make *Chardon* inapplicable, at least insofar as it does not adopt Corbin § 989. *Chardon* specifically concerned an employment discrimination action brought pursuant to § 1983, not a breach of contract claim, which is what Corbin § 989 addresses. Moreover, the Supreme Court in *Chardon* bound the terminated employees to the date of their termination notification because that notification represented a "final decision." The theory behind Corbin § 989, however, is that a plaintiff should be allowed to postpone filing suit when there is time remaining under the contract in which the defendant could reconsider and retract his decision not to perform, thus making the defendant's initial partial repudiation something less than a "final decision" in the *Chardon* sense.

tainly analogous to the present case, where ELIHPA's prepayment restrictions were effectively a partial repudiation by Congress of its contractual obligation to perform or, in other words, to allow plaintiffs to prepay their mortgages without HUD's consent after their 20–year anniversary dates. Congress could have withdrawn that partial repudiation in 1990 when enacting LIHPRHA, even though it chose not to do so. While plaintiffs might have brought suit immediately after the enactment of ELIHPA, they should not be penalized for waiting, first, until after the enactment of Congress's "permanent solution" and then until after they would have been eligible for the benefit of the government's performance.

For the foregoing reasons, therefore, plaintiffs' motion to amend their complaint is ALLOWED. Plaintiffs may file an amended complaint consistent with the court's findings in this Opinion.

IT IS SO ORDERED.