In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3897

ANDREW ORTONY,

*Plaintiff-Appellant*,

*v.*

NORTHWESTERN UNIVERSITY,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 5475 — **George M. Marovich**, *Judge*.

ARGUED OCTOBER 8, 2013 — DECIDED DECEMBER 3, 2013

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Andrew Ortony was a Professor of Psychology, Computer Science, and Education at Northwestern University. In 2007 he asked his Dean, Penelope Peterson, for a year's leave so that he could visit another university. Dean Peterson made a counterproposal: She would authorize paid leave during calendar year 2008 and for the 2011–12 academic year, if Ortony would promise to

teach during the intervening time and then retire. Discussions during May and June 2007 led to a concrete proposal, in the form of a letter from Peterson to Ortony. The key paragraph states: "At your request, I will accept your resignation from the Northwestern University faculty effective with your retirement on August 31, 2012. In recognition of your many years of service to the School of Education and Social Policy (SESP), I will recommend your appointment as an unsalaried Professor Emeritus effective immediately thereafter." The remaining paragraphs spell out when Ortony would be on leave with full salary, when he would carry a full teaching load, and conditions under which he could retire or resign before August 2012 yet retain the benefit of paid leave. Ortony signed the letter on June 25, 2007.

When reminded in 2011 that his final year on the tenured faculty would be on leave with pay, and that he would assume emeritus status in August 2012, Ortony balked. He insisted that he did not want to retire and had not agreed to do so. He filed a charge under the Age Discrimination in Employment Act, 29 U.S.C. §626, and sued when the EEOC authorized him to do so. The district court granted judgment for the University on the pleadings, ruling that the 2007 contract forecloses any contention that Ortony had been fired on account of age. 2012 U.S. Dist. Lexis 169380 (N.D. Ill. Nov. 29, 2012).

The ADEA entitles employees to continue working as long as they can perform the job satisfactorily, but it allows them to trade this right for something they value more, such as retirement packages. Northwestern did not terminate Ortony's appointment; instead it bought out his tenure by promising him five years' pay for three years' work, an offer

that Ortony accepted in 2007—and the fact that he had changed his mind by 2011 does not make the 2007 contract any the less binding.

Ortony contends that the University discriminates by offering retirement packages to older but not younger professors. If that's so, then all retirement (and early-retirement) offers violate the ADEA, because employers don't make such offers to newly hired workers. Like other circuits, however, we have held that offers of retirement packages do not violate the ADEA. Retirement packages, including buyouts of tenure, are a *benefit* of age because they are the sort of offer one would pay to receive, rather than pay to avoid. *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir. 1987). Older workers have an option (the opportunity to be paid for resigning) that younger workers lack—and the ADEA does not forbid offers that favor older workers over their younger colleagues.

The district court did not say much about the merits, ruling that Ortony filed his charge beyond the 300 days allowable in Illinois. Ortony signed the contract in June 2007 but did not file a charge until November 29, 2011. He contends that the 300 days did not start until he was reminded, in February 2011, that his fall 2011 classes would be reassigned (because, under the contract, he was to spend the 2011–12 academic year on paid leave). The time to file a charge under the ADEA does not begin with reminders, however. Nor does it begin on the last date of employment. It begins when an employee learns definitively that he will be let go, because that decision is the act said to be discriminatory. Time runs from the discrimination, not from the date the adverse effects commence. See, e.g., *Chardon v. Fernandez*, 454 U.S. 6

(1981); *Delaware State College v. Ricks*, 449 U.S. 250 (1980); *Lever v. Northwestern University*, 979 F.2d 552 (7th Cir. 1992). Cf. *Lewis v. Chicago*, 560 U.S. 205, 210–12 (2010).

Ortony tells us that those decisions are irrelevant because he "construed the [contract] to set out a tentative plan under which he could leave the University, if he chose to do so, in five years." Yet the construction of a contract is an objective exercise; private beliefs and meanings do not matter. See, e.g., *Draper v. Martin*, 664 F.3d 1110, 1115 (7th Cir. 2011); *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810 (7th Cir. 1987). Even a Professor of English who agrees with Jacques Derrida about the uncertain meaning of most language is bound by his contracts. Ortony does not contend that he communicated his idiosyncratic understanding to Dean Peterson during their negotiations. And no reasonable person could think Ortony's understanding correct. The critical language, which we have quoted, says that Ortony resigns effective August 31, 2012. The contract gives him an option to retire earlier, but not an option to remain later. Ortony's professed understanding of the contract would make it one-sided: Northwestern would give him full pay for two years during which he did no work, while he would not promise anything in return. People pay to acquire options; they do not get options (and two years' pay) handed to them for nothing.

According to Ortony, Lawrence Dumas, Northwestern's Provost, agreed with his understanding of the contract at a lunch meeting on July 30, 2007. Provost Dumas was suffering from a brain tumor at the time; he resigned in September 2007 and died in November 2008. Ortony first described his version of the conversation with Provost Dumas long after the latter's death, which left Northwestern unable to contest

his version of the conversation. This illustrates one of the reasons why the period of limitations in employment-discrimination cases is short. At all events, Ortony does not contend that Provost Dumas was interpreting any particular language in the contract. What Provost Dumas thought or assumed in July 2007 is no more relevant than what Professor Ortony thinks today. To repeat: judges understand written agreements to mean what reasonable people understand them to mean. The potential exception for parol evidence is limited to understandings that the contracting parties exchanged during negotiations—and Ortony does not contend that during negotiations he alerted Dean Peterson to his view that the contract gave him an option to retire (an option he held without need of any contract), while imposing on Northwestern a duty to give him two years of paid leave.

Ortony therefore loses twice over: the charge of discrimination was late, and his substantive claim of discrimination is feeble. He struck a bargain with Northwestern University, received the benefits it promised, and must accept the detriments.

AFFIRMED