CORRECTED OPINION

PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/31/99
THOMAS  K. KAHN
CLERK

No. 98-6174

D. C. Docket No. CV 96-WI-1050-N

MARTHA NANCE,

Plaintiff-Appellant-
Cross-Appellee,

versus

MAXWELL FEDERAL CREDIT UNION (MAX),
THE MEMBERS OF THE BOARD OF DIRECTORS
OF MAX, et al.,

Defendants-Appellees-
Cross-Appellants.

No. 98-6282

D. C. Docket No. CV 96-WI-1050-N

MARTHA NANCE,

Plaintiff-Appellee,

versus

MAXWELL FEDERAL CREDIT UNION (MAX),

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

**(August 31, 1999)**

Before TJOFLAT, DUBINA and HULL, Circuit Judges.

TJOFLAT, Circuit Judge:

The plaintiff in this age discrimination case has succeeded in proving discrimination, but has failed to prove injury. Consequently, the district court's awards of back pay, front pay, and attorneys' fees must be vacated.

I.

Martha Nance was a branch manager at a branch of the Maxwell Federal Credit Union ("Maxwell"). On August 23, 1995, Nance met with Wayne Blackwell, Maxwell's vice president of human resources. Blackwell informed Nance that, as a result of her unsatisfactory performance, Maxwell was no longer willing to employ her as a branch manager. Blackwell then presented Nance with

two options: (1) accept a demotion, including a reduction in salary, or (2) resign and receive severance pay.

The following day (August 24), Nance took a leave of absence from Maxwell. She never returned. She received full salary and benefits through the end of November.[1] Beginning on December 1, and continuing indefinitely, she was classified as being on an unpaid leave of absence. She never communicated any intention of accepting either of the options presented to her by Maxwell.

Meanwhile, Maxwell changed its mind and decided that it wanted Nance to remain a branch manager. On October 18, Maxwell withdrew "options I and II" and asked Nance to return to her former position as soon as possible, with the same salary and benefits package as when she left. This offer was repeatedly reiterated until January 15, 1996, at which time Maxwell, still having received no response from Nance, hired another individual to fill Nance's position. Maxwell informed Nance, however, that it considered her to be on an unpaid leave of absence, and that if she ever wished to return to work for Maxwell, she would be placed in a comparable position to the one she occupied when she left.

---

[1] For the remainder of August and throughout September, Nance was considered to be on administrative leave. During October and November, she was considered to be on paid vacation (and thereby exhausted her accumulated supply of vacation benefits).

On June 28, 1996, Nance filed suit against Maxwell in the United States District Court for the Middle District of Alabama. In her complaint, she alleged, inter alia, that Maxwell discriminated against her on the basis of her age (63 at the time of trial), in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34 (1994). Nance also alleged that Maxwell was liable for a conspiracy among certain of its employees to violate the ADEA, and on this basis included a count of conspiracy under Alabama law. She sought back pay covering the time from August 24 (when she left work) until the date of trial, front pay covering the time from the date of trial until her anticipated retirement (at age 70), and attorneys' fees.[2] The district court sua sponte dismissed the conspiracy claim before trial. The ADEA claim was tried before a jury, which, through a special verdict form, found that Maxwell had discriminated against Nance on the basis of her age. The court awarded Nance back pay, front pay, and attorneys'

---

[2] Nance's complaint also sought injunctive and declaratory relief. Subsequent to the filing of the complaint, however, Nance did not pursue these forms of relief. Consequently, we consider them abandoned, and treat this action as an action solely for back pay, front pay, and attorneys' fees. Cf. Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (affirming district court's holding that plaintiff abandoned a claim that was raised in the complaint but ignored in all subsequent filings).

fees, in the sum of $249,945.12.[3]  The district court denied Maxwell's post-trial

motion for judgment as a matter of law.[4]  Both parties appeal.


## II.

Maxwell appeals the denial of its motion for judgment as a matter of law.  It

contends that no adverse employment action was taken against Nance, and

therefore that Nance has no claim under the ADEA.  Alternatively, Maxwell argues

that Nance was unable to show any injury, and therefore as a matter of law is not

entitled to back pay or front pay.  We address these contentions in order.


## A.

The ADEA prohibits discrimination on the basis of age "against any

individual with respect to his compensation, terms, conditions, or privileges of

employment."  29 U.S.C. § 623(a)(1).  Both "Option I" (demotion) and "Option II"

---

[3] The award consisted of $69,945.48 in back pay (which was doubled to $139,890.96 based on the jury's finding of willfulness, see generally Ramsey v. Chrysler First, Inc., 861 F.2d 1541, 1544 (11th Cir. 1988)), $76,304.16 in front pay, and $33,750 in attorneys' fees.

[4] The motion was made at the close of Nance's case (prior to Maxwell's case and the submission of the case to the jury), and renewed after the verdict was rendered.  See Fed. R. Civ. P. 50(a), (b).

(resignation) offered to Nance on August 23 would have constituted a change in respect to Nance's terms of employment. Neither option, however, was ultimately chosen by Nance. Instead, she took a fully-paid leave of absence, during which time Maxwell withdrew both options and informed her that she would be allowed to remain in her present position. Consequently, argues Maxwell, no adverse employment action was ever taken against Nance; she therefore has no claim under the ADEA.

This contention is logically compelling and would be worthy of detailed discussion were it not foreclosed by Supreme Court precedent. In <u>Chardon v. Fernandez</u>, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the plaintiffs alleged that they were discharged on the basis of their political affiliation. The defendants responded by arguing that the statute of limitations had run on the plaintiffs' claims. The Court, addressing the statute of limitations defense, held that the statute of limitations in an employment discrimination suit begins to run at the time the relevant employment decision is made, not at the time that the consequences of that decision are realized. Thus, in <u>Chardon</u>, the Court held that the statute of limitations began to run when the defendants made the termination decision and notified the plaintiffs of that decision, not when the plaintiffs were actually terminated (approximately one month after the decision). The Court reasoned that

6

a violation of employment discrimination law occurs not when the employee is, for instance, terminated, but when a decision to terminate the employee is made on the basis of a protected personal characteristic. See id. at 8, 102 S.Ct. at 29.

Thus, returning to the present case, Maxwell violated the ADEA when it decided to either demote or discharge Nance on the basis of her age.[5] The fact that Maxwell later changed its mind did not remedy the violation. Maxwell's argument that no adverse employment action occurred therefore fails.[6]

## B.

We now turn to the question of injury. Nance claimed (and received), as compensation for Maxwell's discrimination, back pay and front pay. Maxwell

---

[5] The jury found that Maxwell's decision was based on Nance's age; this finding is not challenged on appeal. We therefore accept it as true.

[6] Maxwell argues that Supreme Court precedent regarding when the statute of limitations begins to run on a claim should not be controlling in regard to whether an adverse employment action has occurred. We disagree. First, as shown above, the Court's reasoning is equally applicable to both questions. Second, because of the Court's precedent in regard to the statute of limitations, adopting Maxwell's argument regarding what constitutes an adverse employment action would leave many discrimination victims without a cause of action. For instance, if an employer notifies an employee that he will be discharged in two years because of his race, the employee is without a cause of action – he cannot sue after receiving the letter, because no adverse employment action has been taken, and he cannot sue after being terminated, because the statute of limitations has run.

7

argues that there was no factual basis for such an award, because any claimed loss of salary and benefits was not caused by Maxwell.[7] Although Maxwell had intended to change Nance's status, in the end, Maxwell never terminated Nance or in any way altered her terms and conditions of employment. Furthermore, in the interim period between Maxwell's decision to demote or terminate Nance and its revocation of that decision, Nance continued to receive her customary salary and benefits. Consequently, Maxwell argues, any harm suffered by Nance in the form of lost wages and benefits is attributable to Nance's own choices, not to any action taken by Maxwell.

We find Maxwell's reasoning on this point persuasive. Maxwell's decision to change the terms and conditions of Nance's employment was never acted upon; therefore, that decision did not cause Nance any harm. The only way that Maxwell's actions could be considered the cause of Nance's lost salary and benefits would be if Maxwell's actions constituted a constructive discharge – in

---

[7] Maxwell's argument, both in the district court and on appeal, was usually framed in terms of Nance's "failure to mitigate" her damages. Upon closer inspection, however, Maxwell's argument is not that it caused damages that Nance failed to mitigate, but rather that it never caused any damages at all.

Nance contends that Maxwell waived this argument by not objecting to the verdict form, which was silent on the topic of injury/mitigation. Given that the argument is a legal one, however, there was nothing for the jury to decide in this regard. Maxwell raised the issue in its motion for judgment as a matter of law; this was sufficient to preserve it on appeal.

other words, if the mere presentation of "options I and II" made the thought of working at Maxwell so unpleasant that Nance reasonably felt compelled to resign. See Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991). The district court, however, ruled as a matter of law that Maxwell's actions did not constitute a constructive discharge.[8] With this theory of recovery eliminated, there is no rational basis on which to conclude that Nance is entitled to back pay and front pay as a result of Maxwell's actions.[9] Because Nance has shown no injury caused by Maxwell, we conclude that the district court's award of back pay and front pay must be vacated.

## III.

Nance appeals the dismissal of her conspiracy claim. The theory behind the claim was that Maxwell was vicariously liable (based on respondeat superior) for a conspiracy among certain individuals within the organization to commit an ADEA

---

[8] This holding is not challenged on appeal.

[9] Nance conceivably could be entitled to damages based on the vacation time that she lost prior to the withdrawal of options I and II. See supra note 1. Likewise, Nance possibly could have made a claim for nominal damages. Neither of these claims, however, were presented to the district court; we therefore do not consider them here. See Walker v. Anderson Elec. Connectors, 944 F.2d 841, 845 (11th Cir. 1991) (holding, in Title VII case, that nominal damages could not be awarded where they had not been requested at trial).

9

violation against Nance.  See generally Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 306 (Ala. 1986) (stating that a corporation may be held liable for damages caused by a conspiracy when two or more of the corporation's agents were involved in the conspiracy).  Nance's claim initially was made against both Maxwell and the relevant individuals within Maxwell.  On summary judgment, the district court dismissed the claim against the individuals on the ground that liability under the ADEA is limited to "employers"; individuals cannot be held liable.  The district court allowed the claim against Maxwell to stand.  At the beginning of the trial, however, the district court also dismissed the conspiracy claim against Maxwell.  This latter dismissal is the subject of Nance's appeal.

Civil conspiracy is not an independent cause of action; there must be an underlying wrong on which the conspiracy claim is based.  See Allied Supply Co. v. Brown, 585 So.2d 33, 36 (Ala. 1991).  The allegation of a conspiracy serves merely to expand liability for the underlying wrong to persons who were not directly involved in the wrongful actions.  See Beck v. Prupis, 162 F.3d 1090, 1099 & n.18 (11th Cir. 1998), cert. granted, – U.S. –, 119 S.Ct. 2046, – L.Ed.2d – (1999).

In the present case, the underlying wrong is a violation of the ADEA.  Violations of the ADEA, however, are governed by a complex statutory scheme –

for instance, liability is limited to "employers," punitive damages are capped, and a claim must be filed with the Equal Employment Opportunity Commission before a private lawsuit may be brought. Allowing a state-law conspiracy claim in an ADEA case would permit plaintiffs to make an "end run" around this federal statutory structure for age discrimination suits. Such evasion would surely frustrate congressional intent. We therefore hold that the enforcement of rights secured through the ADEA must be pursued in the manner specified in the ADEA, not through alternative state-law mechanisms. Cf. Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (holding that a federal conspiracy statute may not be used to remedy a violation of Title VII). Consequently, we affirm the dismissal of Nance's conspiracy claim.

Nance also appeals the amount of attorneys' fees awarded her (contending that the award was too low), while Maxwell cross-appeals (contending that no attorneys' fees should have been awarded). Attorneys' fees are appropriately awarded to a prevailing plaintiff in an ADEA suit. See Ramsey v. Chrysler First, Inc., 861 F.2d 1541, 1544 (11th Cir. 1988). To qualify as "prevailing," a plaintiff must obtain an enforceable judgment against the defendant. See Farrar v. Hobby,

11

506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).[10]  Because we have vacated the plaintiff's damages award, there is nothing in the judgment that can be enforced.  See Tunison v. Continental Airlines Corp., 162 F.3d 1187, 1190 (D.C. Cir. 1998) ("[A] judgment with no damages at all is not an 'enforceable judgment' – there is simply nothing to enforce.")  We therefore vacate the award of attorneys' fees.

## IV.

For the foregoing reasons, the portions of the district court's judgments awarding Nance back pay, front pay, and attorneys' fees are VACATED.  The district court's dismissal of Nance's conspiracy claim is AFFIRMED.  The case is REMANDED to the district court for further proceedings consistent with this opinion.

SO ORDERED.

---

[10] Although Farrar was decided under 42 U.S.C. § 1988 (1994) (dealing with attorneys' fees in civil rights actions) rather than 29 U.S.C. § 626(b) (dealing with attorneys' fees in ADEA actions), the two bodies of law are generally considered interchangeable.  See Heiar v. Crawford County, Wis., 746 F.2d 1190, 1203 (7th Cir. 1984).