Michelle **ENGLAND** and Jane W. **Wise,** Plaintiffs,

v.

**UNITED INSURANCE COMPANY OF AMERICA,** Defendant.

No. CIV.A. 99–A–920–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 31, 2000.

Banks T. Smith, Dothan, AL, for plaintiffs.

William H. King, III, Birmingham, AL, for defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

In this sex discrimination suit, Plaintiffs Michelle England ("England") and Jane W. Wise ("Wise") (collectively, "Plaintiffs") have sued their former employer, United Insurance Company of America ("United") for alleged violations of 42 U.S.C. § 2000e et seq. ("Title VII").[1]

---

1. In their Response, the Plaintiffs assert that their Complaint is based on Title VII and 42 U.S.C. § 1981. *See Response* at 10. Although § 1981 is mentioned in the Complaint as a jurisdictional basis for the present action, there is no count of the Complaint that alleges a violation of § 1981. Therefore, the court finds that there is no § 1981 claim. The liberal pleading rules set down in Federal Rule of Civil Procedure 8(a) do not allow a court to "fabricate" a claim that the "plaintiff has not spelled out in his pleadings." *Maniccia v. Brown,* 171 F.3d 1364, 1366 n. 1 (11th Cir.1999) (citation omitted). Of course, even

Before the court is a Motion for Summary Judgment (doc. # 11) filed by United on March 21, 2000. After extensive briefing by the parties, the Motion for Summary Judgment came under submission on May 1, 2000. Upon careful consideration of the arguments presented by the parties, and, for the reasons set forth below, the court finds that United's Motion Summary Judgment is due to be GRANTED.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates,* 887 F.2d 1493 (11th Cir.1989). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## III. *FACTS*

The facts when viewed in a light most favorable to the Plaintiffs are as follows:

In 1997, United decided that it would no longer sell new insurance policies in Alabama and would limit its future activities to the collection of premiums and the service of existing policies. As part of this decision, United decided to consolidate some its existing offices and, in conjunction with office closures, reduce its overall number of Alabama employees. In 1998, as part of this plan, United merged its Dothan, Alabama office into its Opelika, Alabama office. In conjunction with this merger, United instructed James Carraway ("Carraway"), the District Manager for the Dothan office, to reduce the total

assuming that the Complaint contains a claim for relief under § 1981, such a claim would not go forward for the reasons the court outlines below in connection with the Plaintiffs'

Title VII claims, because the same analysis applies to both statutes. *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998).

number of employees in the region. Six agents in the Dothan office, three male and three female, including England and Wise, were terminated as part of this reduction in force ("RIF"). Seven male and four female agents were retained. The Plaintiffs have sued United claiming that the decision to terminate them was based on their sex.

Additional facts as they relate to the individual claims of the Plaintiffs are set out more fully in the court's discussion below.

## IV. DISCUSSION

United asserts that the Plaintiffs have failed to satisfy all the conditions precedent to suit under Title VII. Accordingly, United argues that this action is procedurally barred. The court will first confront this procedural argument before turning to the merits of the claims sub judice.

### A. 180–day Rule

As a condition precedent to the right to file a civil action under Title VII for employment discrimination, a plaintiff must file a charge alleging unlawful discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5(e). United has moved for summary judgment based, in part, on its contention that the Plaintiffs failed to file their charges of discrimination within the statutorily mandated 180–day time period. In support of this contention, United asserts that England was notified on June 18, 1998 that she would be terminated and that Wise was notified on July 16, 1998 that she would be terminated. United also points out that neither England nor Wise filed a discrimination complaint with the EEOC until March 1, 1999—almost eight full months after they received notice of their termination and well beyond the 180–day time period.

In *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431

(1980), and *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) the Supreme Court set forth the general rule that the date of the notice of termination, and not the actual date of termination itself, is the operative date from which the 180–day time period begins to run. *See Chardon,* 454 U.S. at 8, 102 S.Ct. 28 ("mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination") (quoting *Ricks,* 449 U.S. at 257, 101 S.Ct. 498). Courts in this circuit have applied this rule without exception. *See, e.g., Nance v. Maxwell Fed. Credit Union,* 186 F.3d 1338, 1341 (11th Cir.1999) (ADEA case) (the 180–day time period begins to run "at the time the relevant employment decision is made, not at the time that the consequences of that decision are realized"); *Pearson v. Macon–Bibb County Hosp. Auth.,* 952 F.2d 1274, 1279 (11th Cir.1992) (Title VII case) ("the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become most painful") (quoting *Chardon* 454 U.S. at 8, 102 S.Ct. 28).

It is, however, well established that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite [but a condition precedent] to suit in federal court", and that timely filing is subject to equitable modification. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In this case, the Plaintiffs have cited to evidence that requires equitable modification of the 180–day rule. Specifically, the evidence shows that Carraway "strung the Plaintiffs along" and made them believe that the RIF termination decision had not been made final notwithstanding their termination letters. Apparently, Carraway told the Plaintiffs that he would place them in other positions at United so that their terminations would not be necessary. Without citing to authority, United disputes the legal effect of this evidence and asserts that "[e]ven if

the plaintiffs were 'strung along' as they suggest, the fact does not change the" application of the 180–day rule as set forth in *Ricks* and *Chardon*. The Eleventh Circuit, however, has held otherwise.

In *Cocke v. Merrill Lynch & Company, Inc.*, 817 F.2d 1559 (11th Cir.1987), the court found that similar facts required equitable tolling of the 180–day rule because "[i]t is too much for the law to expect an employee to sue his employer for ... discrimination at the same time he is led to believe the employer is trying to place him in another job." *Id.* at 1561–62. Thus, in this case, the 180–day filing period would be tolled during any time that Carraway led the Plaintiffs to believe that he was trying to place them in another job. Equitable modification, however, does not toll the filing period indefinitely. When "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights" equitable tolling ends and the 180–day filing period begins to run. *Id.* at 1561 (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975)). In this case, the parties have not attempted to locate the point at which it became apparent (or, at least, should have been apparent) to the Plaintiffs that Carraway "ceased to actively pursue" another position for them. *Id.* For this reason, the court finds that there is at least a fact issue as to when it was reasonably apparent that the termination decision had been made so as to trigger the 180–day filing period. Accordingly, summary judgment would be improper on this ground. *See Cocke*, 817 F.2d at 1562 (similarly noting that this issue "presents a triable fact, which cannot be disposed of on summary judgment").

**B. The Merits**

England and Wise contend that United discriminated against them on the basis of their sex when it terminated their employment. Absent direct [2] or statistical evidence,[3] a plaintiff seeking to prove discrimination must present her case circumstantially according to the now familiar *McDonnell Douglas* burden-shifting framework. Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Eskra v. Provident Life & Accident Ins. Co.*, 125 F.3d 1406, 1411 (11th Cir.1997). If the plaintiff meets this burden, then an inference arises that the challenged action was motivated by a discriminatory intent. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir. 1989). The burden then shifts back to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089. If the employer successfully articulates such a reason, then the inference of discrimination established by the prima facie case disappears, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and the burden shifts back to the plaintiff to show that the proffered reason is really a pretext for unlawful discrimination. *See Burdine*, 450 U.S. at 255–56, 101 S.Ct. 1089.

**1. Prima Facie Case**

■ Because this case involves a discharge as part of a reduction in force, Wise or England may establish a prima facie case of discrimination upon a showing:

---

**2.** The Plaintiffs argue that they have presented direct evidence of discrimination in that David England testified that, in his opinion, Carraway had made a gendered hiring decision in the past. *See Pl. Response* at 15. This sort of evidence is clearly not "direct evidence" for the reasons set forth in *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081–82 (11th Cir.1990) (describing type of evidence that qualifies as direct evidence).

**3.** *See infra* note 8.

"(1) that she is a member of a protected class, (2) that she was terminated, (3) that she was qualified for another position at the time of termination, and (4) that the employer intended to discriminate in failing to consider the plaintiff for another position." *Coutu v. Martin County Bd. Of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir.1995); *see also Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318 (11th Cir.1998) (setting forth elements of prima facie case for Title VII RIF termination claim). The parties agree that the Plaintiffs satisfy the first two elements of a prima facie case of discrimination. The remaining portions of the Plaintiffs' prima facie case present more difficult problems.

The Plaintiffs have ignored the RIF termination prima facie case altogether and relied solely on an ordinary discharge version of the prima facie case, which is described in cases such as *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1525 (11th Cir.1991), and *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984). This version requires a plaintiff to show "(1) that she was a member of the protected class, (2) that she was qualified for the position held, (3) that she was terminated, and (4) that she was replaced by a person outside the protected class." *Id.* The *Weaver* version of the prima facie case is generally inapplicable to RIF terminations because the employee is not replaced at all—her position is eliminated entirely. *See Coutu*, 47 F.3d at 1073 (noting this disconnect between RIF termination and ordinary discharge prima facie cases). As a result, the RIF termination prima facie case has been modified to fit the reality of a RIF termination claim by requiring the plaintiff to show that she was qualified for another position at the time of her termination and that her employer's decision not to place her in another position was based on impermissi-

ble discrimination. *See, e.g., Mauter v. Hardy*, 825 F.2d 1554, 1557 (11th Cir.1987) (ADEA) (noting that RIF termination claim is modified because of the unique facts that it presents). Because the Plaintiffs treat this action as an ordinary discharge claim, they do not discuss their prima facie case in terms of the recognized RIF termination elements. *See, e.g., Jameson v. Arrow Co.*, 75 F.3d 1528 (11th Cir.1996) (ADEA)(describing methods of satisfying fourth element of RIF termination prima facie case). Although the court expresses serious doubt as to whether the Plaintiffs have established a prima facie case of sex discrimination, it will, for the present purposes only, assume that they have done so.[4]

### 2. Legitimate Nondiscriminatory Reason

■ The Plaintiffs contend that the selection of which agents to terminate was based on gender. United counters this assertion by stating several strong nondiscriminatory reasons for its decisions.

The challenged RIF terminations began with United's decision to close its Dothan office and place any existing business in the region under the control of United's Opelika office. As noted, in conjunction with this merger United planned to consolidate its existing operations and reduce its overall number of employees. The selection of which agents were terminated occurred in several steps.

First, Carraway made the decision that the sales managers in the Dothan office, David England and Ed Bess ("Bess"), senior members of United's staff, would be demoted to the level of agent and given part of an existing service area within the Dothan district.[5] This decision meant, among other things, that David England's and Bess's demotion and reassignment would displace an existing agent from his

---

4. The court notes that an equal number of men and women were terminated.

5. Apparently, United divided up the State into Districts, which were sub-divided into service

areas or "debits." An agent was then assigned to a particular service area or debit and was primarily responsible for the customers in that region.

or her service area and, consequently, would require that agent to be either reassigned or terminated as part of the RIF.

Carraway decided to place David England and Bess in the existing service area in which they resided. David England, husband of Plaintiff England, lives in the same service area as Plaintiff England (in the same house) and hence was given the majority of her service area or debit. Likewise, Bess lived in Plaintiff Wise's service region, and, consequently, he took over her debit. As a result of these decisions, the Plaintiffs, who no longer had a debit to service, faced either reassignment or outright termination as part of the RIF.

United asserts, as its legitimate nondiscriminatory reason, that Carraway made the decision to terminate the Plaintiffs instead of reassigning them based on the application of the following four factors: (1) geography; (2) seniority; (3) performance; and (4) staff manager evaluations. *Def. Ex. C.* United asserts that, on balance, these factors favored retaining other employees rather than the Plaintiffs. The court finds that this is a sufficient reason to meet the light burden imposed on United at this stage of the *McDonnell Douglas* framework.

### 3. Pretext

■ The burden now shifts back to the Plaintiffs. At this stage, the court must, in view of all the evidence, determine whether the Plaintiffs have cast sufficient doubt on United's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct." *Cooper–Houston v. Southern Ry. Co.,* 37 F.3d 603, 605 (11th Cir.1994). To this end, "[t]he plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a fact finder to conclude that the reasons given by the employer were not real reasons for the adverse employment decision." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). A plaintiff may accomplish this goal by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence" or by directly persuading the district court that discrimination was the true reason behind the challenged action. *Combs* 106 F.3d at 1539 (citation omitted).

The Plaintiffs examine each of the factors in an attempt to show that Carraway did not act in accordance with his stated reasons.

### A. The Alleged Equivocation

The Plaintiffs, who believe they have demonstrated better job performance history than their male counterparts who were retained during the RIF, seek to establish that job performance was the *primary* criterion that Carraway used to determine who should be retained and that the other three criteria were not, in fact, used. It is undisputed that Carraway has indicated that geography was the most important factor he used in making his decisions. The Plaintiffs apparently hope to demonstrate an equivocation in Carraway's proffered nondiscriminatory reason by showing that the stated reason (job performance, seniority. staff evaluations, and *especially geography* ) was not the true nondiscriminatory reason (primarily, job performance).[6] Plaintiffs attempt to

---

**6.** It is important to point out that the Plaintiffs are not (apparently) contending that performance was the true reason behind the challenged action but only that it is the real nondiscriminatory reason. In other words, the Plaintiffs wish to rewrite the nondiscriminatory reason given by Carraway to be performance, instead of the four factor test he artic-

ulated, because the Plaintiffs believe that they had a historically greater job rating than many of their male counterparts who were retained. This argumentative ploy is what logicians refer to as a "straw man" in that the Plaintiffs wish to respond to an argument of their choosing and not one that is actually presented. However, because even their

use this alleged equivocation in Carraway's statement of his nondiscriminatory reasons for the challenged decisions as a basis for showing that the real reason (chiefly job performance) could not have been the true reason (sex discrimination) behind the challenged decisions. To this end Plaintiffs argue that since job performance is the real nondiscriminatory reason, the proffer is pretextual because the Plaintiffs both had a better job performance record than any of the males retained during the RIF. As the Plaintiffs have put it: "If performance was the predominate criteria for termination, why were male agents retained with poorer performance ratings than females who were terminated?" *Pl. Response* at 21. The evidence, however, does not support the Plaintiffs' assertions, and the alleged equivocation does not appear to exist.

The Plaintiffs have cited to several statements that Carraway made in an effort to show that he based his decision chiefly on job performance and not on the four factor test described above. The Plaintiffs, however, rely on a highly stylized version of this evidence that ignores the literal meaning of particular phrases or the context in which a particular remark was made. As such, the Plaintiffs' attempt to find an equivocation in Carraway's statements follows only from their stylized version of the evidence and not from anything that Carraway actually said.

### 1. Carraway's Affidavit

First, the Plaintiffs attempt to dissect Carraway's Affidavit, which was submitted along with the materials on summary judgment, and attempt to show that although Carraway "claims that geographic reasons were the utmost decision factor, ... he speaks more of performance than geogra-

phy." *Pl. Response* at 19. This assertion has no merit because the Affidavit clearly sets out *all* four stated reasons (including job performance), and as such, the Plaintiffs' attempt to argue otherwise is unsupported by the text of the document: "My decisions were based primarily on the following four factors: (1) geographics, (2) seniority, (3) performance, and (4) staff manager evaluations." *Def. Ex. C.* at 3. There is nothing in Carraway's Affidavit that suggests an equivocation in his articulated nondiscriminatory reasons for terminating the Plaintiffs or shows that job performance was the most important of the factors he used in making those decisions. It is difficult to see how the Plaintiffs could have a good faith basis for asserting that Carraway's affidavit contains such an equivocation; it is impossible to see how any reasonable juror could find one.

### 2. Bess' Statements

Second, the Plaintiffs assert that Bess testified that Carraway told him and others that performance would be the chief factor used to determine who would be terminated.[7] As before, the Plaintiffs' assertion is not grounded in evidence inasmuch as the statements they refer to are taken out of context. For example, the Plaintiffs cite to the following portion of Bess' deposition in which he described several statements that Carraway made regarding the RIF:

> Counsel: What do you remember [Carraway] telling the debit people that day during the course of that meeting?

> Mr. Bess: What do I remember him telling—well, that we are going to be reducing the number of debits and that we needed to do a good job because that

---

"straw man" argument is without merit, the court will not pass on the legitimacy of the Plaintiffs' argumentative ploy and will follow the Plaintiffs down this fallacious path.

**7.** The Plaintiffs also cite to statements that Bess and England made regarding the criteria used to decide who should be terminated. These statements do not support the Plaintiffs'

argument that Carraway primarily used performance as the chief decisionmaking criterion because there is no evidence that anyone other than Carraway played a role in the challenged decisions. Accordingly, Bess' and England's statements do not shed any light on Carraway's motivations.

would be one of the things that would be used, you know. Because, you know, no matter how long you've been there, if you didn't do a good job—you know, they had several things that counted, but the only one we could really control would be our job performance, was the only one that we could control.

\*　　\*　　\*　　\*　　\*　　\*

Counsel: Did [Carraway] ever tell them at any point during the course of this first meeting that geography was at all going to be a factor in who was retained and who was terminated?

Mr. Bess: Well, I know it was told. I don't know just when and what, but it was understood all the time that had to be a part of it, yes, sir.

*Pl.Ex. E* at 30 et seq.

These statements are representative of the remarks that the Plaintiffs have cited. The Plaintiffs claim these remarks demonstrate an equivocation in Carraway's stated reasons for making the RIF termination decisions. As is self-evident from the quoted passages, the Plaintiffs have no basis for asserting that the above testimony is inconsistent with the four factor test that Carraway described. In fact, all of the testimony cited by the Plaintiffs seems to indicates that geography, performance and other criteria would play a role in Carraway's decision.

In sum, the court rejects the Plaintiffs' suggestion that there is an equivocation in Carraway's stated reason for the RIF termination selections.

8. The Plaintiffs also contend that Exhibit I is statistical evidence of discrimination. For the reasons discussed above, the court finds that Exhibit I is not evidence of anything.

9. In fact, Defendants have submitted a summary of their own in response to Exhibit I that appears to demonstrate that the Plaintiffs had poorer performance ratings than many of their colleagues. *See Reply* at 10 (noting the net monthly lapse statistics).

### B. Performance and Exhibit I

As noted, the Plaintiffs assert that Carraway could not legitimately have used performance as a criterion for the RIF terminations because the Plaintiffs had better job performance ratings than many of the male employees who were retained. In support of this argument, the Plaintiffs point to Plaintiffs' Exhibit I, which they assert establishes the Plaintiffs' superior job ratings vis-a-vis their males counterparts. Exhibit I, however, is unpersuasive.

Exhibit I is a document that was prepared by Plaintiffs' Counsel in connection with Carraway's deposition. Although the Plaintiffs have cited to Exhibit I as if it were the smoking gun of Carraway's discriminatory intent, they have not attempted to explain why the document shows their superior performance ratings or what the clouded amalgam of information contained therein purports to show. In this regard, the document is certainly not self-explanatory and, absent the claimed purpose of its submission, it is impossible to say what the document demonstrates. In sum, Exhibit I is incomprehensible and Plaintiffs' counsel has not described what it means. It is, therefore, not evidence of anything,[8] much less of the Plaintiffs' superior performance history.[9]

Accordingly, the court finds that the Plaintiffs have not cited to any evidence from which a reasonable juror could conclude that the Plaintiffs had a better job rating than any of the males retained during the RIF.[10]

10. The court notes that the Plaintiffs have cited to David England's deposition in which he stated that he thought the Plaintiffs were superior employees. Because he was not a decisionmaker, his opinion is not relevant to the reasons that Carraway terminated the Plaintiff.

### C. Geography

As noted, one chief reason that Carraway decided to terminate the Plaintiffs was the fact that he wanted his agents to live in their service area or debit. The Plaintiffs assert that this is not a "credible" reason for terminating the Plaintiffs because *historically* United had not considered geography in making its employment decisions.

In analyzing this argument, the court faces a major obstacle. The Plaintiffs use the word "geography" in an equivocal fashion. By geography, Carraway clearly meant "service region or debit" (that is, he tried to place agents in the service area in which they resided). The Plaintiffs, however, interpret geography to mean the physical location of a particular person vis-a-vis the physical location of the insurance policies they serviced. For example, the Plaintiffs argue that the fact Bess (and Wise) lived in Opp and yet serviced Andalusia creates an issue of fact as to the veracity of Carraway's assertion that geography was a factor he used in making his decisions: "Mr. Bess, who replaced Ms. Wise, lives in Opp and now covers the Andalusia debit, whereby Ms. Wise had always lived in Opp and covered the Andalusia debit before being terminated." *Pl. Response* at 21. This argument makes little sense in that the term "geography" is clearly equivalent to "service area" or "debit." Opp and Andalusia appear to be within the *same* service area (Covington County).[11] Thus, Carraway's statement that Bess was placed in the Covington County service area, thereby ousting Plaintiff Wise, actually supports his assertion that geography (i.e., the service area) was a factor in his decision—that is, it explains why Bess took over Plaintiff Wise's service area.

Assuming, however, that Plaintiffs are correct and, in the past, United did not place an emphasis on geography (i.e., the location of an employee with respect to his service area) in making its employment decisions, there is simply no evidence that Carraway did not use geography as a basis for making the *challenged* employment decisions. Both David England and Bess *were* placed in the service area in which they resided and the Plaintiffs have pointed to no evidence of any person retained during the RIF who did not reside in his or her service area. Although sweeping allegations are made that geography is not a credible factor, the Plaintiffs have produced no evidence from which a reasonable juror could disbelieve Carraway's statement that geography did play a role in the challenged decisions. Finally, and most important, both parties have cited to evidence that the RIF terminations and the concomitant office mergers substantially changed United's past practice in many respects. Debits were combined, agents were reassigned, and debit service operations were consolidated as part of United's rather dramatic decision to cease selling insurance in Alabama. In these circumstances, past practice is simply not probative of an employer's current decisionmaking practices.

Plaintiffs could argue that although Carraway consistently applied geographical considerations in making the challenged decisions, as the evidence shows that he did, the use of geography itself was somehow a mere mask for discrimination. In order to make such a finding, one would have to believe that Carraway somehow figured out that applying geographical considerations to his RIF termination selections would disproportionately impact women. It is not surprising that the Plaintiffs have not attempted to argue this latter sense of pretext because, given the

---

**11.** The Plaintiffs have not submitted evidence that describes which portions of the Dothan district are within which service areas. The Defendants have done so. *See Ex. E. to the Reply Br.* (Attachment to Carraway's Affida- vit). Because Plaintiffs have not addressed this issue, the court can only assume that United's version is the correct one. The Plaintiffs, apparently, do not dispute Carraway's description. *See Response* at 4.

complex nature of the RIF termination decisions, it would be nearly impossible to believe that Carraway orchestrated the entire selection process so that factors he chose would result in more men being retained than women.

For these reasons, the court finds that there is insufficient evidence from which a reasonable juror could believe that Carraway did not act in accordance with his assertion that geography was a factor in his decision.

### D.  Seniority

Carraway also asserted that he made his RIF termination selections based on seniority.  Seniority was clearly one of the principal reasons that Carraway gave for deciding to give the Plaintiffs' service regions to David England and Bess—that is, Carraway made the decision that the senior staff in the Dothan office would be demoted to the level of agent.  The Plaintiffs contend that they have evidence that suggests this reason is pretextual.

The Plaintiffs cite to Carraway's Affidavit and assert that "United's claim to apply a seniority factor is invalid and disproved within its own affidavit exhibit." *Response* at 22.  The Plaintiffs, however, do not explain why Carraway's Affidavit disproves his assertion that seniority was a factor.  In fact, Carraway's Affidavit clearly states that seniority *was* a factor.  *See Plaintiffs Ex.* D. And, Exhibit I to the Affidavit shows that all retained males who allegedly were less qualified than the Plaintiffs had seniority over England and all but one had seniority over Wise.

The Plaintiffs also point to a portion of Wise's deposition in which she states that Carraway said that seniority was not going to be a factor.  *See Response* at 23 Even assuming this is true, it does not, as the Plaintiff's argue, create a jury question as to Carraway's stated reasons for his RIF termination selections.

First, what Carraway (in looking ahead) said would be part of the criteria he would use in making the RIF termination selec-tions has only a slight connection to what criteria were in fact used.  To this end, the Plaintiffs have made no attempt to link Carraway's statement to his actions.  The Plaintiffs, for example, have not pointed to any evidence that seniority was not in fact one of the factors used.  Second, in an analogous context, the Eleventh Circuit has held that "[a] plaintiff in a discrimination case based on circumstantial evidence can avoid judgment as a matter of law [or summary judgment] by putting on a prima facie case and by producing evidence sufficient to discredit in the mind of a reasonable juror *all* of the defendant's proffered nondiscriminatory reasons for its actions." *Combs* 106 F.3d at 1543 (emphasis added).  Even assuming, therefore, that Wise's deposition creates an issue of fact as to the veracity of Carraway's stated use of seniority as a RIF criterion (which the court holds that it does not), the Plaintiffs have not cast doubt on any of the remaining factors that he used so as to preclude summary judgment.

At this stage of the *McDonnell Douglas* framework, the court's task is to determine "whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs,* 106 F.3d at 1538.  Given the fact that all of the other evidence cited to the court appears to be entirely consistent with Carraway's statement that seniority was one of the four factors he applied in making his RIF termination selections, the court finds that Wise's general remark in her deposition does not cast "sufficient doubt" on Carraway's statement so as to survive summary judgment.

### D.  Loose Ends

█ The Plaintiffs have cited evidence that shows that Carraway told the Plaintiffs that they might be able to keep their jobs notwithstanding their termination letters.  United does not dispute this fact.  Without explanation, the Plaintiffs assert

that this is evidence of pretext. The court does not agree.

The gist of the evidence cited to by the Plaintiffs is that Carraway treated the Plaintiffs unfairly. This may be true. According to the Plaintiffs, Carraway baited the Plaintiffs into believing that the termination notices they received were not "written in stone" and told them (on several occasions) that he would continue to seek other positions for them at United. There is even evidence that, at one point, Carraway went so far as to dissuade Plaintiff England from accepting other employment on promises that she would not be terminated. The Plaintiffs contend that this was for the purpose of keeping them hard at work while changes were being made. It could also be true, however, that Carraway was hoping that something would develop to allow the Plaintiffs to continue to work. Whichever is true, it makes no difference in the court's concluding that the Plaintiff's have simply failed to submit evidence showing that United's proffered reason for including the Plaintiffs in the RIF is really a pretext for unlawful discrimination.

The court is not unsympathetic to aggrieved employees who feel they have been treated badly by their employers. Federal courts, however, "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [employment laws do] not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988)).

### F. Summary

In support of their pretext argument, the Plaintiffs have focused solely on an examination of each factor in isolation from the others. Carraway, however, asserted that he applied *all* four factors to each individual in making his termination selections. Accordingly, the most powerful reason for rejecting the Plaintiffs' suggestion that the four factor test is somehow pretextual is that the Plaintiffs simply have not made any attempt to show that these factors, as applied in toto, somehow do not account for the RIF termination selections that were made. Such an attempt would ultimately fail because, as the court has indicated above, the evidence pointed out by the Plaintiffs provides no reasonable basis to conclude that the factors were not the motivating criteria behind Carraway's decisions.

Accordingly, the court finds that, assuming the Plaintiffs could establish a prima facie case of sex discrimination, the Plaintiffs have failed to create a triable issue of fact as to the legitimacy of the nondiscriminatory reason that United proffered for its decisions. For this reason, United's Motion for Summary Judgment is due to be GRANTED.

A separate order will be entered in accordance with this Memorandum Opinion.

### ORDER AND JUDGMENT

In accordance with the court's Memorandum Opinion entered this day, it is hereby ORDERED as follows:

1. The Defendant's Motion for Summary Judgment is GRANTED.

2. Judgment is entered in favor of the Defendant, United Insurance Company of America, and against the Plaintiffs, Jane W. Wise and Michelle England.

3. Costs are taxed against the Plaintiffs.