[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

--------------------------------------------
No. 05-11131
Non-Argument Calendar
--------------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 12, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00055-CV-HLM-4

PAULETTE CHRISTIAN,

Plaintiff-Appellant,

versus

CARTERSVILLE CITY SCHOOLS BOARD OF EDUCATION,
STEVE GAMBILL,
Individually and in his official capacity as Principal,
MIKE BRYANS,
in his official capacity as Superintendent,

Defendants-Appellees.

--------------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
--------------------------------------------------------------------

**(January 12, 2006)**

Before EDMONDSON, Chief Judge, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Paula Christian, an African-American, appeals the district court's grant of summary judgment in favor of her former employer, Cartersville City Schools Board of Education (the "Board"), the City Schools Superintendent Mike Bryans, and Principal Stephen Gambill, on Plaintiff's complaint alleging racial discrimination, raised pursuant to 42 U.S.C. §§ 1981 and 1983, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.[1] No reversible error has been shown; we affirm.

Plaintiff was employed as a teacher at Cartersville Elementary School from August 1996 through 2002. Plaintiff received satisfactory annual evaluations until 2000, when Gambill became principal. Under Gambill, the Plaintiff received some negative evaluations. When a teacher receives five "needs improvement" scores on formal evaluations, that teacher is subjected to additional monitoring.

---

[1] Plaintiff's complaint included also a claim of retaliation under Title VII, a state-law claim for intentional infliction of emotional distress, and a claim of constructive discharge. Summary judgment was granted dismissing these claims. About the retaliation claim, Plaintiff failed to show that she engaged in statutorily protected activity, and Plaintiff failed to show an adverse employment act. About the state law-claim, the magistrate judge determined that no probative evidence linked acts by Defendants to claimed maladies suffered by Plaintiff. Because Plaintiff does not pursue these claims on appeal, they are deemed abandoned. See Draper v. Reynolds, 369 F.3d 1270, 1277 n. 12 (11th Cir.), cert. denied, 125 S.Ct. 507 (2004). About the constructive discharge claim, Plaintiff failed to address constructive discharge in her brief in opposition to summary judgment before the magistrate judge; the magistrate judge concluded the constructive discharge claim was abandoned. Plaintiff sought to revive the constructive discharge claim in her objections to the magistrate report, although even Plaintiff conceded that "she was not specific in addressing the constructive discharge claim;" the district court adopted expressly the magistrate judge's conclusion that Plaintiff abandoned her constructive discharge claim. We agree.

Plaintiff was the subject of much additional observation by Gambill and Cartwright, the assistant principal. Also, an independent educational consulting group known as "RESA" was contacted; and a RESA consultant was assigned to observe and evaluate Plaintiff. The RESA consultant concluded that Plaintiff's performance was unacceptable. Gambill received many complaints from parents about Plaintiff's conduct in her classroom.

In early 2002, Gambill told Plaintiff that the Board would not renew her contract for the next year. Under Georgia state law, a teacher's contract is automatically renewed if no written notice of non-renewal is received by April 15th. See O.C.G.A. § 20-2-211.[2] The other teachers -- none of whom were African-American -- all received renewal contracts before April 15. Unlike her colleagues, Plaintiff received no renewal contract before April 15; but it is undisputed that the Board failed also to send Plaintiff written notice of non-renewal by 15 April 2002. The absence of written notice of non-renewal operated as a matter of law as an offer to renew Plaintiff's contract.

---

[2]O.C.G.A. § 20-2-211(b) provides, in relevant part: "[E]ach local governing board shall, by not later than April 15 of the current school year, tender a new contract for the ensuing school year to each teacher....or shall notify in writing each such teacher... of the intention of not renewing....When such notice of intended termination has not been given by April 15, the employment of such teacher ... shall be continued for the ensuing school year unless the teacher ... elects not to accept such employment...."

In May 2002, Plaintiff was provided a contract for the following year, which she refused to sign. Plaintiff claims that Gambill told her that she could work in the school system but that she would be placed at another school. Instead of accepting the job at another school in the Cartersville City school system, Plaintiff informed Appellees that she would accept a teaching position in the City of Atlanta school system.

Plaintiff alleged that Gambill's negative evaluations and increased scrutiny were harassing and without legitimate reason. Plaintiff claimed that Gambill acted because of her race and because she had complained about what she believed to be racially discriminatory disciplinary treatment meted out to students. Plaintiff also contended that the increased classroom observations to which she was subjected and the decision not to renew her contract were motivated by racial animus and constituted a constructive discharge. According to Plaintiff, the belated contract offer she received in May was a pretext to cover Appellees's illegal motives.

A plaintiff in a Title VII case alleging discriminatory treatment and relying on circumstantial evidence bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. Texas Dept. of Community Affairs v. Burdine, 101 S.Ct. 1089,1093) (1981). A plaintiff establishes a prima facie case of racial discrimination by showing that she

4

was (i) a member of a protected class; (ii) subjected to an adverse employment act; (iii) qualified to do the job; and (iv) replaced by, or otherwise lost a position to, a person outside the protected class. Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). The Report and Recommendation prepared by the magistrate judge concluded that Plaintiff failed to show an adverse employment act. In a comprehensive opinion adopting the Report and Recommendation, the district court concluded similarly that Plaintiff failed to establish a prima facie case because no adverse employment act had been shown.

At issue is whether statements made to Plaintiff by Appellees in early 2002 that no contract renewal would be forthcoming establishes the requisite adverse employment act. Citing Maxwell Federal Credit Union v. Nance, 186 F.3d 1338 (11th Cir. 1999), Plaintiff argues that the oral notice in early 2002 of the Board's intent not to renew her contract constituted an adverse employment act. In Maxwell, this Court concluded that an employer's decision communicated to the employee that the employee would be required to take a demotion or resign constituted an adverse employment act even though the employer reversed the decision before the employee was required to accept a demotion or resign. Id. at 1341. Maxwell concluded that Chardon v. Fernandez, 102 S.Ct. 28 (1981),

foreclosed treating the consequences of the employer's decision -- the demotion of resignation -- as the adverse employment act.  Maxwell, 186 F.3d at 1341.

In Chardon, the Supreme Court determined that the statute of limitations begins to run for employment discrimination actions on the date an employer notifies an employee of a termination decision and not when the employee actually is terminated.  Chardon, 102 S.Ct. at 29.  Extrapolating from the Chardon decision, we in Maxwell, concluded that the discriminatory violation occurred when the employer made the decision to demote or discharge on an impermissible basis and notified the employee of the decision:  that the employer later changed its mind did not remedy the violation.  Maxwell, 186 F.3d at 1341.

The operative decision in Maxwell (the decision to demote or discharge) and the operative decision in Chardon (the decision to terminate on a specified date in the future) required no further act by the employer to effect an adverse change in the complainant's employment.  The instant appeal, is different.  An earlier decision to terminate when no written notice of termination was delivered to Plaintiff by 15 April 2002 was incapable -- as a matter of law -- of effecting an adverse change in Plaintiff's employment.  And as required under Georgia law, Plaintiff was offered a contract renewal -- which she declined -- before she could

suffer a tangible harm.[3]  The undisputed facts show, as a matter of law, that

Plaintiff failed to establish a <u>prima</u> <u>facie</u> case: no adverse employment act was

shown.[4]

Plaintiff fails to show reversible error.

AFFIRMED.

---

[3]While <u>Nance</u> supports Plaintiff's argument that a decision to terminate establishes an adverse employment act before an act of actual termination transpires, this Court also has observed that a decision to reprimand, to transfer or not to promote an employee is no adverse employment act if the decision is rescinded before the employee suffers a tangible harm. <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1267 (11th Cir. 2001).  Because we conclude that Georgia statutory law renders <u>Nance</u> inapplicable to Plaintiff's contentions, we need not address any seeming tension between <u>Nance</u> and <u>Pennington</u>.

[4]Even if we were to assume <u>arguendo</u> that Plaintiff established a <u>prima</u> <u>facie</u> case, Defendants proffered a legitimate non-discriminatory reason for its acts: complaints and concerns about Plaintiff's teaching performance, including the opinion of an independent observer that Plaintiff's teaching performance and classroom control were unacceptable.  While Plaintiff argues that these expressed performance-based reasons were pretextual, viewing the evidence in a light most favorable to Plaintiff, Plaintiff failed to come forward with evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons" for the employment action.  <u>Chapman v. AI Transp</u>., 229 F.3d at 1024 (internal quotation and citation omitted).  In short, Plaintiff failed to "proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextural." <u>Id</u>. at 1024-25.