# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2845

ARTHUR L. LEWIS, JR., *et al.*,

*Plaintiffs-Appellees*,

*v.*

CITY OF CHICAGO, ILLINOIS,

*Defendant-Appellee*.

APPEAL OF:

TERRENCE C. BUTLER, EUGENE PAYLOR,
ANTHONY ROSS, and GERARD D. MINNIFIELD

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 5596—**Joan B. Gottschall**, *Judge*.

ARGUED NOVEMBER 29, 2012—DECIDED DECEMBER 17, 2012

Before EASTERBROOK, *Chief Judge*, and POSNER and
MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.    After this suit had been
pending for 14 years—indeed, after final judgment had
been entered—four persons sought to intervene in order

to upset the judgment and improve their own fortunes at the expense of other members of the class. The district court deemed the proposed intervention untimely and denied the motion. Appellate review is deferential, see *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 945 (7th Cir. 2000), and we conclude that the district judge did not abuse her discretion in denying the would-be intervenors' motion. (To simplify exposition, we call them "the intervenors" and omit qualifications such as "would-be" or "aspiring.")

The litigation arises from a civil-service examination administered in July 1995 to persons who wanted to join the Chicago Fire Department. The City concluded that scores of 89 to 100 signify high qualification and hired initially from that group. Only in 2002 did it begin to hire (at random) from the "qualified" group who had scored 65 to 88. Hiring from that pool continued until 2006, when the City administered a new examination. Plaintiffs in this suit contend that drawing a line at 89 had an unjustified disparate effect on black applicants and thus violated Title VII of the Civil Rights Act of 1964.

A procedural dispute reached this court in 2000. *In re Lewis*, 212 F.3d 980 (7th Cir. 2000). After holding a bench trial in 2006, the district court concluded that the City had not proved the justification it advanced for its selection method. A final decision in 2007 provided relief to applicants in the "qualified" pool who had not been hired by the Fire Department. *Lewis v. Chicago*, 2007 U.S. Dist. LEXIS 24378 (N.D. Ill. Mar. 20, 2007). We reversed after concluding that the charge of discrim-

ination had been filed with the EEOC after the statute of limitations expired, because plaintiffs' claim accrued when applicants in the qualified pool were told that they were unlikely to be hired. *Lewis v. Chicago*, 528 F.3d 488 (7th Cir. 2008). The Supreme Court disagreed, holding that a new claim accrued with each use of the list to hire another group of firefighters. *Lewis v. Chicago*, 130 S. Ct. 2191 (2010). On remand, we held that the charge of discrimination was untimely with respect to the first group of hires but timely with respect to later hires. *Lewis v. Chicago*, 643 F.3d 201 (7th Cir. 2011). Implementing that decision, the district court revised the judgment to reduce from 132 to 111 the number of class members who must be hired; under this judgment other class members who have not been hired receive damages. Neither the plaintiffs nor the City of Chicago appealed that decision.

The four intervenors have been working as firefighters since 2005. Each was selected at random from the "qualified" pool, passed the physical and completed the required training course, and entered on duty. Each was aware of the litigation no later than 2005. Some of the intervenors attended the oral argument at the Supreme Court in 2010 and the oral argument in this court on remand in 2011. Each contends that he thought, until recently, that he would receive extra seniority, pension credits, or back pay in this litigation. Each contends that he is entitled to intervene, even after judgment, because not until later did he learn that class counsel had decided not to seek any relief on behalf of persons hired from the "qualified" pool.

The district judge thought the motion to intervene untimely because the intervenors knew (or readily could have learned) in 2007 that they were no longer members of the class. As the district judge saw things, the process used in spring 2007 to compile a database of persons eligible for relief—a database that excluded anyone who had been hired by the Fire Department—amounted to a change in the class definition. Only persons never hired by the Fire Department received any benefit from the judgment entered in April 2007. An attempt to intervene five years later is much too late, the judge thought. See, e.g., *People Who Care v. Board of Education*, 68 F.3d 172, 175 (7th Cir. 1995) (people must intervene promptly after they learn, or readily could have learned, that developments in the litigation jeopardize their interests).

If the class definition had been modified in 2007, then the right question to ask would concern the statute of limitations, not the discretionary standard for timely intervention. Once a suit is filed as a class action, the statute of limitations is tolled until the district judge declines to certify a class, or certifies a class that excludes particular persons. A decision against certification, or a limited certification, ends the tolling and the time resumes running. See *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983); *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). Resumption is automatic; neither *American Pipe* nor *Crown, Cork & Seal* suggested that it depends on anyone's knowledge that class certification had been denied or the scope of a class limited. The Supreme Court held that in this case a new claim accrues with each use of a device that creates a disparate

impact. The last such use was in 2001; after that, all hires from the 1995 list were made in a fashion that the class concedes is proper. So if the tolling effect of the original class action ended in 2007, with respect to anyone excluded from the class because already hired as a firefighter, then the intervenors (and anyone similarly situated) had at most 300 days to complain to the EEOC. Yet none of the intervenors has ever filed a charge of discrimination with the EEOC, and none acted in any other fashion within 300 days of the judgment entered in April 2007. Once the statute of limitations expired on the intervenors' claims, there would be no point to intervention, because none of them would have a viable claim for relief.

Yet although the district judge stated that the class had been modified in 2007, we cannot find an order modifying the class definition. More than that, we cannot find an order defining the class in the first place. Lewis and the other representative plaintiffs moved in 1999 for the certification of a class. The district court entered a one-sentence order granting that motion. Despite the explicit instructions of Fed. R. Civ. P. 23(c)(1)(B), the order did not define the class. Rule 23(c)(1)(B) reads: "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." The district judge did not do *any* of these things—not in 1999, not ever. (The language we have quoted is from the current version of Rule 23(c)(1)(B), which was promulgated in 2003. The version of Rule 23 in force in 1999 required the court to define the class, though not to appoint class counsel.)

The plaintiffs contend that the district court must have certified this class in 1999:

> [A]ll African American firefighter applicants who took and passed the 1995 written firefighter examination who received a score of 65 or greater but less than 89, but who, as a result of their test scores, have been and continue to be denied the opportunity to take the physical performance test and to be hired as firefighters.

If that is the class, then the four intervenors were members in 1999 but dropped out in 2005 when they were hired as firefighters. The language we have quoted appears in the 1999 motion (though not in any order of the district court). But plaintiffs' 1999 motion contains other definitions, including: "all African American firefighter applicants who received scores of 65 or greater but less than 89 on the 1995 written exam". Class counsel put a variant of the latter definition on their web site and have used it frequently—including, according to the intervenors, when assuring each of them that he continued to be a member of the class after being hired in 2005.

Class counsel have used other definitions over the years, and the district judge likewise has used varying definitions in opinions issued in 2005, 2007, 2011, and 2012. The intervenors have cataloged 13 different potential definitions of the class—all used somewhere by the judge or class counsel, but none appearing in a class-certification order. The class has never been formally defined, and in the absence of an original definition it is not possible to pin down the date of modification (if there was one). The only safe way to proceed is

to assume that the four intervenors have been members of the class since 1999 and remain members today. They therefore do not encounter any problem under the statute of limitations, though a question about the timeliness of the motion for leave to intervene remains.

The intervenors acknowledge knowing about the litigation no later than 2005. In 2007 the district court devised a remedy that gave them (and other persons hired between 2002 and 2006) no relief. The intervenors say that no one told them about this—but then no one had to. The district court invoked Rule 23(b)(2), which covers situations in which "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole". Rule 23(b)(2) does not require notice, because no one can opt out of a (b)(2) class. Nor does Rule 23 require notice when a class action is resolved on the merits. Although members of a (b)(3) class must be notified of a settlement, see Rule 23(e)(4), no one is entitled to notice of the final decision in a suit fought to the finish, as this one was.

Members of a (b)(2) class can monitor the litigation, and these intervenors did just that when attending oral arguments in the Supreme Court and this court. They could have asked to see the judgments entered in 2007 and 2011 but did not. During the argument held in this court in 2011, counsel representing the class stated that persons who had been hired between 2002 and 2006 would not receive any relief; that did not prompt the intervenors to act, and the district judge was entitled to conclude

that persons who had let all of these opportunities slide by were not entitled to intervene in 2012.

The intervenors blame their inaction on class counsel. They say that they were told, by counsel's web site as well as direct communications, that they remained members of the class and could look forward to a benefit. (Class counsel respond that three of the four nonetheless knew, well before June 2012, when they sought to intervene, that they would not share in the remedy.) Lest our conclusion that the request for intervention came too late set the stage for malpractice litigation against class counsel, we add that intervention would have been pointless because class members hired between 2002 and 2006 would not have received relief no matter what they, and the class counsel, did or said.

The goal of this litigation was to assist applicants injured by the disparate effect of the "well qualified" cutoff at 89. In 2001, when the pool of persons who scored between 89 and 100 was exhausted, the violation of Title VII ceased, and the City's hiring process complied with Title VII. Although some persons hired from the "qualified" pool between 2002 and 2006 might have been hired earlier had the City made offers, beginning in 1996, to the entire pool of persons who scored 65 or above, the random nature of the process makes it impossible to know who would have gained as a result—and also makes it sensible for the district judge to conclude that class members who took a bird in hand surrendered their opportunity to share in a recovery that, as of 2005, remained uncertain. The City vigorously contested liability. Trial did not occur until 2006, the

initial judgment was entered in 2007, and in 2008 we held that the class loses outright. It took a decision of the Supreme Court in 2010 to establish an entitlement to relief.

Applicants hired between 2002 and 2006 suffered at most a delay in employment, while those never hired suffered a greater injury. The intervenors have been on the payroll since 2005, receiving salary and accruing seniority; the other class members lack those benefits. Our decision in 2011 led the district judge to find that 111 persons who had not yet been hired are entitled to jobs that would commence in 2011 or 2012, with seniority back to 1999 (the midpoint of the time when the City was in violation of Title VII). Giving extra seniority to persons who had been receiving the benefits of employment since 2005 would make these 111 (and all other firefighters hired since 1999) worse off. Similarly, allocating back pay to the persons hired between 2002 and 2006 would injure other members of the class, because the pot available for distribution is limited. The court calculated how many African American applicants would have been hired, and when, had selections been made at random from the outset, and compared that with the number actually hired. This calculation determined how many extra offers of employment the Fire Department must make and how much back pay goes to the class as a whole. A judge properly could conclude that the remedy should be concentrated on the never-hired applicants rather than be shared with those who had been enjoying salary and accruing seniority, and who might not have been injured at all. To repeat: given random selection, the intervenors might have been hired

in 2005 or later, or not hired at all (the fate of more than 6,000 other class members), had the City chosen from the pool of those who scored 65 and over beginning in 1996 rather than 2001, and thus never violated Title VII.

AFFIRMED